EXHIBIT "B"

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**
**FAMILY DIVISION**

| | | |
|---|---|---|
| NANCY JENNINGS, | ) | Civil Action No. |
| | ) | 2020CV337822 |
| Petitioner, | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY GALLUPS, | ) | |
| | ) | |
| Respondent. | ) | |

**RECEIVER'S SECOND INTERIM REPORT**

S. Gregory Hays, solely in his capacity as Receiver herein ("**Receiver**"), appointed pursuant to the Court's *Order Compelling Compliance, Appointing Receiver, and Granting Injunctive Relief* entered in this civil action August 16, 2023 (the "**Receivership Order**"),[1] files this *Receiver's Second Interim Report*.

## I.   OVERVIEW

The Receiver continues to operate the business of the Affiliated Entities (the "**Business**") and market for sale the Business and other assets of the Receivership Estate.  The Receiver has had extensive interactions with creditors of the Receivership Estate, including: the United States of America, the State of Georgia, multiple landlords, and lenders. The Receiver has also appeared in litigation in state and federal courts, and participated in court-ordered mediation, as discussed below. The Receiver's plan remains to sell the Business to pay the Business's creditors and Respondent Jeffrey Gallups' ("**Respondent**") individual obligations including substantial and

---

[1] Unless otherwise indicated, capitalized terms in this Interim Report will have the meanings attributed them in the Receivership Order and the *Receiver's First Interim Report* filed November 1, 2023, both being incorporated herein.

overdue court-ordered alimony owed to Petitioner Nancy Jennings ("**Petitioner**") and claims of the United States of America/the State of Georgia and the IRS.

Cash flow remains extremely tight, and the Business continues to be burdened by the consequences of pre-receivership mismanagement On March 14, 2024, the Court approved the sale of substantial Receivership assets and approved interim bridge financing.  The bridge financing and recent successful negotiations and workings with a major insurance carrier have helped partially alleviate the Business's cash flow pains.  The Receiver anticipates successfully operating the Business until closing of the existing sale agreement and the sale of remaining assets, though cash flow will continue to be challenging despite these positive developments.

II.  **HISTORY**

The Affiliated Entities were poorly managed for many years and were in a late stage of rapid decline immediately prior to the appointment of the Receiver. Management had: (1) discontinued paying rent to many of the critical landlords; (2) discontinued paying vendors, causing payables to increase to over $4 million; (3) withdrew no less than $400,000 from the Business specifically earmarked for payment to the United States Department of Justice ("**DOJ**"), but intentionally failed to remit that money to the DOJ, instead misappropriating it for Respondent's personal use, thereby exposing the Business to millions of dollars in additional debt and liens; (4) failed to timely transfer the business out of Respondent's name, resulting in termination of the Business's Medicare contract was terminated; (5) failed to resolve issue with Blue Cross/Blue Shield ("**BCBS**"), resulting in termination of that contract; (6) failed to pay important professionals including the court appointed Special Master; (7) failed to pay taxes for Respondent for two years resulting in the filing of a lien against Respondent's Florida property; (8) spent over $1.5 million on purported restructuring costs that did not result in a sale or

restructuring transaction; (9) stopped paying for the services of an investment banker in March 2022; (10) failed to actively market the Business in 2023; (11) caused the resignation of key finance employees; (12) frustrated key doctors to the point some resigned; (13) failed to properly maintain facilities; and (14) overpaid for life insurance policies which subsequently had to be terminated resulting in extremely high termination fees.

During the period from 2019 to 2022, Milton Hall Surgical Associates, LLC ("**MHSA**") had retained two investment bankers and spent over $1.5 million in legal and restructuring cost in an effort to sell the Business. The Business incurred substantial professional fees in connection with a Quality of Earnings report, legal restructuring fees, and legal fees for a doctor in connection with a proposed transaction. Most of these fees were not paid.

Essentially, it appears that management had given up any effort to sell the Business in August 2022 and focused on the concept of selling the equity to Melissa Moritz ("**Moritz**"), Respondent's then-wife and CEO of the Affiliated Entities. This process took the form of negotiations of a sale of the clinics to a "friendly doctor" with Moritz owning the Management Company and the Management Company's signing a note payable to Moritz for $50 million. The disruption and management failure were so detrimental to the Business that Respondent engaged bankruptcy counsel in Atlanta for the Affiliated Entitles on June 6, 2023, and caused the entities to pay a $15,000 retainer to Scroggins & Williamson. In addition to a corporate bankruptcy, Respondent sought personal bankruptcy counsel in Florida and paid a $10,000 retainer on August 22, 2023, to Nowack & Olson, PLLC.

The Special Master and Petitioner negotiated a Term Sheet with Respondent in July 2023 that would have left Moritz as CEO of the Business. However, Respondent ignored the Term Sheet

and transferred the Business in what is referred to in the Receivership Order as the "Covert Transfer."

Given the above events and Respondent's conduct as reported to the Court by the Special Master, the Court appointed the Receiver on August 16, 2023. At that time, the Business was close to immediate collapse with no prospects for a sale or a loan. While management repeatedly advised the Special Master a loan and sale were imminent, no documents regarding a pending sale or loan in Summer 2023 have been located.

Immediately upon his appointment, the Receiver faced numerous challenges in what appeared to be an almost impossible position given the lack of funds, demands for payment, and short timeframe to get a sale transaction negotiated. As of the filing of this Receiver's Second Report, the Receiver and his professionals have managed to continue operating the Business, while also marketing the Business for sale. The Receiver has entered into an Asset Purchase Agreement with Northside Hospital, Inc. ("Northside Hospital") respecting substantial assets of the Receivership Estate. Northside Hospital is providing bridge loan financing to help the Business operate until the sale transaction is closed. Nevertheless, the Business continues to face numerous and significant challenges because of mismanagement of the Business prior to the Receiver's appointment.

For additional information since the Receiver's appointment, see the *Receiver's First Interim Report* filed November 1, 2023.

## III.    LEGAL DISPUTES AND PROCEEDINGS

### A. Receiver's Resolution of Respondent's Default under *Qui Tam* Settlement Agreement

On June 30, 2017, Relator Myron Jones, M.D. ("**Relator**") filed a *qui tam* action under seal in the United States District Court for the Northern District of Georgia, *United States ex rel.*

*Myron Jones, MD., et al. v. Milton Hall Surgical Associates, LLC d/b/a The ENT Institute and a/k/a the Ear, Nose & Throat Institute, Jeffrey M Gallups, MD., et al.*, Civil Action. No. 1:17-cv-24 72, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b), and the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168, et seq. (the "***Qui Tam* Action**"). Relator brought claims against Respondent and MHSA for violation of the False Claims Act, 31 U.S.C. § 3729, et. seq., the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168, et seq., and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). The DOJ and the State of Georgia (collectively, the "**Government**"), intervened in that action, asserting claims against Respondent and MHSA, including, *inter alia*, claims arising out of the receipt of illegal remuneration and illegal kick-back arrangements in connection with Medicare, Medicaid, and TRICARE.

The parties to the *Qui Tam* Action entered into a Settlement Agreement as of November 17, 2021, whereby Respondent, for himself and on behalf of MHSA, agreed to pay $3,068,434.00 (the "**Settlement Amount**") in settlement. The Settlement Agreement provides that, if the Settlement Amount is not fully paid within the time permitted under the agreement, the Government would have judgment against Respondent and MHSA in the significantly greater amount of $5,388,863.00 (the "**Settlement Default Amount**").

Following the Receiver's appointment, the Receiver discovered that Respondent had failed to make monthly installment payments to the Government under the Settlement Agreement and was approximately six months in arrears. As a result, Respondent and MHSA were required to pay $596,656.62 on or before September 5, 2023, or else the Settlement Agreement default provisions would become effective, and Respondent and MHSA would be liable for the entire Settlement Default Amount.

The Receiver determined that the Business likely would not survive the imposition of the Settlement Default Amount which would have added a $2.1 million lien against MHSA. The Receiver and the Government engaged in extensive negotiations and agreed to terms whereby the Business would pay the remaining Settlement Amount once anticipated Medicare reimbursements resumed. However, actual Medicare payments received were significantly less than what had been anticipated and there were insufficient funds available to pay the Government. Despite this, since his appointment the Receiver has paid the Government $258,000. The current balance of the Settlement Amount is approximately $344,000.00 plus interest.

On November 27, 2023, the Government filed a motion in the District Court seeking the entry of a judgment for the Settlement Default Amount. The Receiver filed a written response in opposition to the Government's motion. On December 1, 2023, the District Court heard the Government's motion and the Receiver's objection and ordered the parties to participate in mediation of their dispute. Assisted by United States Magistrate Judge Christopher Bly, as Mediator, the Receiver and the Government reached an agreement subject to final approval of the District Court to resolve their dispute. This resolution gives the Receiver additional time to pay the Settlement Amount. The Receiver anticipates paying the Settlement Amount from the net sale proceeds of the Receiver's sale of Respondent's property located at 205 Hendricks Isle, Ft. Lauderdale, Florida 33301 (the "**Florida Property**"). The Receiver and the Government have negotiated the final terms of their agreement, summarized in their *Joint Status Report of The United States of America, The State of Georgia, and S. Gregory Hays, Receiver*, filed in the District Court February 29, 2024, a copy of which is attached to this Report as Appendix "1."

### B. Issues Relating to the Florida Property

The Florida Property came into the Receivership Estate because of the Receiver's September 8, 2023, *Receiver's Emergency Motion for Order Holding Jeffrey Gallups in Contempt and Granting Other Relief* and the Court's September 21, 2023, *Order on Receiver's Emergency Motion for Order Holding Jeffrey Gallups in Contempt and Granting Other Relief*. Following intensive in-court negotiations Respondent agreed, among other things, to transfer the Florida Property to the Receivership Estate to purge Respondent's contempt of court. Respondent's agreement was announced in open court and on the record by Respondent's counsel, and was incorporated into the October 12, 2023, *Order on Respondent's Compliance to Purge Contempt* (the "**Contempt Purge Order**").

On December 13, 2023, the Receiver filed his *Receiver's First Motion for Order Supplementing August 16, 2023, Receivership Order*, seeking an order clarifying that the titleholder to the Florida Property, Hendricks Trust, is included within the Receivership Estate. The Receiver sought this relief to facilitate the Receiver's sale of the Florida Property. The Court entered an order on January 8, 2024, granting this motion.

In addition, the Receivership Order provides the Receiver with control over the Florida Property. The Receivership Order states in part:

> 29. The Receiver is authorized to take immediate possession of all real property of Respondent, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, certified mail, statutory overnight delivery, U.S. mail, e-mail, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing or erasing anything on such premises. Respondent and all other persons and entities having control, custody or possession of any such property are hereby directed to turn such property over to the Receiver.

30. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. Respondent, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

32. Upon the request of the Receiver, local sheriffs and law enforcement is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

Respondent has not paid the mortgage on the Florida Property. The mortgage loan has been accelerated and the payoff amount as of January 12, 2024, is $2,720,128.25. The mortgage holder, First Horizon Bank, has commenced foreclosure proceedings in Florida, after consulting with the Receiver and with the Receiver's consent. Respondent has not paid necessary expenses of the Florida Property, including utilities, HOA fees, property taxes and pool maintenance. Further, the Receiver has discovered that the Florida Property has a leaking the roof. The Receiver has engaged a contractor to perform the repairs so that the Florida Property can be sold. The roof repairs should be completed during the final two weeks of March 2024. As of March 15, 2024, the Receiver has paid Respondent's expenses of $428,810.99, and an additional $503,008.60 remain owing. A report of the expenses that the Receiver has paid or needs to pay respecting the Florida Property and expenses paid to or for the benefit of Respondent is attached as Appendix "2."

The Receiver does not have funds to pay the on-going expenses and has discussed the sale of the Florida Property with the secured creditor and the Government. The Receiver must move quickly to sell the property to pay the property taxes and to fund the settlement payment to the Government by the June 1, 2024, settlement deadline.

The property is unique as it is a townhouse that combines two units and is 7,241 SF. The property was on the market for a year when Respondent purchased in 2021. The original list price was $4.125 million and sold for $3.8 million.

8

The Receiver had the property appraised for $4.5 million. Given the unique nature of the property and the need to sell quickly, the Receiver has consulted with real estate professionals and has engaged, Lamar P. Fisher, CAI, AARE, of Fisher Auction Company, a reputable auction company in Broward County, Florida, to market and sell the Florida Property. The proceeds from the sale of the Florida Property are anticipated to satisfy costs of sale, secured debt of $2.7 million, the settlement payoff to the Government discussed in Section III., A., of this Report, payment of approximately $750,000 in criminal obligations to the Government, and some portion of 2020/2021 taxes of $2.4 million for which the IRS has filed a lien. Depending on the sale price, funds may be used to pay capital gains taxes and 2023 income taxes. The Receiver does not anticipate surplus sale proceeds to pay Respondent's other obligations including alimony or excess funds to cover obligations of the Affiliated Entities.

To facilitate the Receiver's sale of the Florida Property, the Receiver sent Respondent written notice on March 7, 2024, demanding Respondent vacate the Florida Property no later than April 1, 2024.  Respondent's counsel responded to that notice demanding the Receiver pay Receivership funds to Respondent, threatening to sue the Receiver and his counsel, and giving no indication whatever that Respondent intends to vacate the Florida Property or comply with his Court-ordered obligation to cooperate with the Receiver's sale of the Florida Property and its contents.  *See* copies of the March 7, 2024, notice and Respondent's counsel's responses attached to this Report as Appendix "3;" *see, also*, Contempt Purge Order, ¶¶ 3, 4, which provide:

> 3. Respondent shall surrender his ownership interest in 205 Hendricks Isle, Ft. Lauderdale, FL 33301 to the Receiver for sale. The Receiver shall list the home for sale and apply the net proceeds of the sale (after the mortgage is paid off, closing costs, and Respondent's federal tax liens are paid) to pay sums Respondent owes under the Court Orders in place in this case and to the benefit of the Receivership Estate. Respondent will cooperate, if necessary, on the issue of a revocable trust related to the property and he will cooperate and waive any homestead protection he may have related to the property.

4. Respondent shall surrender the tangible items (guns, pens, guitars, art, furniture) to the Receiver for sale. The proceeds of sale shall be applied to the obligations that Respondent has under existing Court Orders and toward the Receivership's obligations;

In the course of preparing the Florida Property and its contents for auction, the Receiver has discovered that property—including a Yamaha grand piano the Receiver has been advised was originally purchased for $100,000—has been removed from the Florida Property. Respondent was ordered to turn over all assets including the piano in the Contempt Purge Order. The Receiver has inquired about the missing property, but Respondent and his counsel have refused to provide any explanation.

Additionally, Respondent for the first time now asserts that the majority of the furniture and other personal property contents of the Florida Property belong to his most recent ex-wife, Moritz. The Respondent did not mention any transfer of property between himself and Moritz in his deposition in October 2023, and did not mention any interest of Moritz in property when the Receiver inspected the Florida Property in October 2023. In addition, much of the furniture was purchased by Respondent and charged to his American Express credit card. Respondent has not provided any evidence that the furniture is owned by Moritz. Respondent first raised this issue on March 7, 2023, when he provided a list of items to the Receiver's personal property auctioneer that Respondent now claims belong to Moritz. The list, purportedly dated "May 11, 2023," was not previously provided to the Receiver. A copy of the list is attached to this Report as Appendix "4."

The Receiver regards all personalty within the Florida Property as property of the Receivership Estate, all of which will be sold at auction for the benefit of the Receivership Estate absent reliable evidence showing ownership to the contrary.

**C.  Receivership Estate's Dispute with Respondent**

On December 6, 2023, in the midst of the Receiver's efforts to resolve with the Government Respondent's *qui tam* liability and default, the Receiver was compelled to file his *Receiver's Motion for Protective Order, Disqualification of Counsel, and for Additional Related Relief*, to stop Respondent from further interfering with the Receiver's resolution with the Government, and to disqualify MHSA's former lawyer from representing Respondent in matters adverse to MHSA. In response, Respondent filed his *Jeffrey Gallups' Motion to Remove Receiver and Response in Opposition to Receiver's Motion for Protective Order, Disqualification of Counsel, and for Additional Related Relief* and *Motion for Investigator Funds*.

The Receiver has filed written responses in opposition to both Respondent motions and incorporates into this report those responses and his protective order motion.

**D.  Respondent's Continued Default of Alimony Obligations to Petitioner**

Respondent's alimony obligations to Petitioner are presently Five (5) months in arrears. The most recent payments of alimony were made only because they were ordered by the Court as a condition of Respondent's not being incarcerated for his contempt of court. Petitioner is owed past due alimony as of March 2024 of $325,000. Additionally, Petitioner's attorneys' fees (less amounts paid pursuant to the Court's contempt orders) as of February 29, 2024, are approximately $355,102.91. Further, Respondent still owes Petitioner $10,250,000.00 plus accrued interest of $713,705.50 as of March 15, 2024, from the sale of the Business.

**E.  Georgia Banking Company ("GBC") Obligation**

MHSA entered into a line of credit agreement with GBC in October 2021. The obligation is in default because of nonpayment and the principal amount due is $514,842.20. The Receiver and GBC have entered into a forbearance agreement which provides for weekly payments to GBC

of $22,500 beginning January 15, 2024, and continuing until the outstanding debt is paid. It is anticipated that final payment will be made from the Receiver's sale of the Business.

**F. Landlord Disputes**

The Receiver continues to negotiate with landlords and, as necessary, appear in court proceedings to protect the Receivership Estate's interests under its leases. The Receiver and several landlords have entered into agreements, including consent orders, to establish landlord rights to payment and possession. The Business's lack of available cash has prevented the Receiver from making payments to landlords. With few exceptions, landlords have not been paid since prior to the appointment of the Receiver. The Court's approval of the bridge loan financing discussed in Section VI., C. enabled the Receiver to make certain good faith payments to landlords. The Receiver will continue to work with the landlords on partial payment plans. The Receiver anticipates that all landlord arrearages will be satisfied in full from the proceeds of the sale of the Business. The following is a summary of landlord disputes:

- Four Plus Corporation (Landlord), Village Green Shopping Center, Smyrna, Georgia: Dispossessory action commenced in the State Court of Cobb County, September 29, 2023. MHSA is no longer operating from this location and the Receiver has consented to Landlord's taking possession of the premises.

- CPI/AHP Brookhaven MOB Owner, LLC (Landlord), 3929 Peachtree Rd., Suite 100, Atlanta (Brookhaven), GA. Dispossessory action commenced in DeKalb County Magistrate Court, August 11, 2023.

- Parkway Professional MOB I (Landlord), 1485 Jesse Jewell Parkway, Suite 220, Gainesville, GA: On August 29, 2023, Landlord served a written notice of default on MHSA, alleging an arrearage of $34,541.06.

- LaGrange Med Ventures, LLC (Landlord), 1015 La Fayette Parkway, Suite 130, LaGrange, GA. On August 22, 2023, Landlord served a written notice of default on MHSA, alleging and arrearage of $52,092.07. MHSA is no longer operating from this location and the Receiver has consented to Landlord's taking possession of the premises.

- GAHC4 Lawrenceville GA MOB II, LLC (Landlord), 600 Professional Dr., Lawrenceville, GA. Landlord filed an action for damages and/or possession of leased

premises in the State Court of Gwinnett County, October 11, 2023. Landlord dismissed and refiled February 7, 2024. Landlord claims an arrearage of $87,676.49.

- GAHC3 Stockbridge GA MOB II, LLC (Landlord), 1365 Rock Quarry Road, Stockbridge, GA. Landlord filed an action for damages and/or possession of leased premises in in Henry County Magistrate Court, October 11, 2023. Landlord dismissed and refiled February 7, 2024.  Landlord claims an arrearage of $144,626.34.

- Commerce Professional Corp. (Landlord) 1000 Commerce Drive, Suite 200, Peachtree City, GA. Landlord sent notice of default on October 16, 2023, demanding payment of an arrearage of $48,608.91. Landlord subsequently filed a dispossessory action in the State Court of Fayette County, Georgia.

- SFG Preston Ridge MOB, LLC (Landlord) 3330 Preston Ridge Road, Suite 240, Alpharetta, GA. Landlord commenced the dispossessory action in the State Court of Fulton County, Georgia. Landlord claims an arrearage of $208,176.51.

- White Oak Holdings, LLC (Landlord) 1595 East Hwy. 34, Newnan, GA. Landlord filed a petition for writ of possession in the Magistrate court of Coweta County, Georgia. Landlord claims an arrearage of approximately $134,602.98.

- Lakeman Investments, LLC (Landlord) 1210 Commerce Dr., Suite 106, Greensboro, GA. Landlord commenced a dispossessory action in the magistrate court of Greene County, Georgia. MHSA is no longer operating from this location and the Receiver has consented to Landlord's taking possession of the premises.

## IV. BUSINESS OPERATIONS

### A. Key Points and Developments: Financial:

- Accounts Payable. Current Accounts Payable as of February29, 2024, are approximately $6.16 million, with an additional credit card debt of approximately $400,000. The Business continues to negotiate payment plans with its vendors and landlords. Most of the vendors and landlords have been reasonable and flexible in these negotiations. For comparison, Accounts Payable were reported to be $1.36 million at the end of 2022. At the time of the Receiver's appointment, Accounts Payable were reported to be $3,589,814.57. The Receiver has determined that not all payables were added to the accounting system, and he continues to update the Accounts Payable report as additional invoices are located and added to payables.

The following is a summary of all MHSA payments from August 1, 2023, through February 29, 2024:

13

| Payroll | 5,573,998.91 | 68.45% |
|---|---|---|
| Medical Supplies | 350,583.57 | 4.31% |
| Landlords | 289,483.57 | 3.55% |
| GBC Loan | 379,204.88 | 4.66% |
| DOJ | 220,000.00 | 2.70% |
| Brightside/IT Consultant | 218,754.59 | 2.69% |
| Employee Insurance | $43,295.67 | 0.53% |
| Company Insurance Cost | $515,303.56 | 6.33% |
| Other Payables | $463,705.94 | 5.69% |
| Receiver/Special Master | $61,836.40 | 0.76% |
| American Express | $26,891.69 | 0.33% |
| **Total Expense Paid** | **8,143,058.78** | 100% |

- Bank Debt. MHSA entered into a line of credit agreement with GBC in October 2021. The obligation is in default because of nonpayment and the total amount due is currently $514,842.20. The Receiver and GBC have entered into a forbearance agreement which provides for weekly payments to GBC of $22,500 beginning January 15, 2024, and continuing until the outstanding debt is paid. It is anticipated that final payment will be made from the Receiver's sale of the Business. GBC has been reasonable, responsive and flexible in these negotiations.

- Accounts Receivable. Current Accounts Receivable are approximately $2.6 million. Importantly, this total excludes approximately $1.1 million of Accounts Receivable from BCBS Anthem that are due to the Business. The Receiver signed a new contract with BCBS on November 19, 2023, and anticipated payment of all claims since November 19, 2023. However, the period from July 19, 2023, through November 18, 2023, remains in dispute. The Receiver hopes to reach a resolution with BCBS Anthem to recover those funds.

- Cash Flow. Cash Flow for the Business remains extremely tight, and the Receiver has had difficulty making payroll every two weeks. The reasons are manifold: the reduced revenue and elevated payables has receiver trying to catch up on rent and other obligations. Additionally, the cancellation of BCBS Anthem and the cancellation of the Medicare contract in April 2023 (subsequently reinstated in October 2023) remain critical factors. Due to the cancellation of these two contracts, the Business lost significant revenue, causing the Business to lose staff and lose credibility with trade creditors and landlords. However, fortunately, the BCBS Anthem payments recommenced on March 15, 2024. The Receiver expects the "catch up" on past owed monies to come in gradually as they are processed.

- Revenue. Sales Revenue has declined due the cancellation of two key provider contracts, loss of an important doctor in Newnan, the resignation of the hearing aid director leading to the closing of that division, and the closing of four (4) unprofitable locations.

**B.  Key Points and Developments: Operational**

- The Receiver has determined to suspend business at four (4) locations: Lake Oconee, Lagrange, Dawsonville, and West Cobb. The primary reason for this decision is the lack of staff and unprofitability of the locations.

- Despite the loss of some employees during this transition, the key staff that are vital to the Business have been retained. The Receiver has recently made some key hires for senior operating roles. Unfortunately, the Business experienced challenges in the Finance division when the VP of Finance and Controller resigned upon the Receiver's appointment. In addition, a contract employee from a CPA firm was employed and that did not work out. The Receiver has recently employed a new contract controller to close the books for 2023 but does not have the support of a well-trained finance and accounting department.

- The Hearing Center was one area impacted by the negative news and financial difficulty surrounding the ENT Institute. It has suffered severe loss of employees since mid-2023. The Receiver has successfully negotiated a solution that involves receiving the same services previously rendered internally from a third-party provider. This provider is owned and managed by the Business's outgoing head of this division. Additionally, plans are under way to rebuild internally this division.

- The Business aggressively increased marketing focused primarily on social media platforms and improving the website. The Receiver repaired and upgraded the website, which had numerous issues at the time when the Business entered receivership.

- Concurrent with the heightened marketing plan, the Business has focused on ensuring the scheduling process is more efficient. It is vital that scheduling functions optimally to capture the patient demand generated by the marketing campaigns. The Receiver continues to work on correcting and fixing deficiencies and gaps inherited from prior management.

- While the Business is in an extremely difficult position at the present time, the Receiver anticipates that the Business can continue operating until the closing of the sale(s) of the Business assets. The Business's staff have worked extremely hard under difficult circumstances and have been adept at working within these limitations. The result of these efforts has been a respectable 2023 financial year and continued interest from financial and industry partners.

- The Receiver has focused on cutting costs and expenses and negotiating payment plans with vendors while maintaining a focus on patient care while working toward a sale of the Business.

- The Receiver is continuing to review all regulatory compliance, code and legal requirements at all clinics and surgery centers.

C. **Northside Hospital Asset Purchase Agreement**

On March 14, 2024, the Court approved an Asset Purchase Agreement ("APA") with Northside Hospital. The terms of the APA are summarized, as follows:

- Acquired Facilities: Buyer will acquire certain of the Business's facilities as set forth in the APA.

- Purchased Assets: All property and assets of Sellers (other than the "Excluded Assets" under the APA) used at or in connection with an Acquired Facility, including all inventory, equipment, purchased receivables, permits and licenses, intellectual property, goodwill, assumed contracts, and deposits.

- Purchase Price: $10,000,000.00.

- Closing Date: Within ten (10) business days after satisfaction or waiver of the requirements of Article IX of the APA (estimated at 30 days after Court approval of the APA).

In connection with the APA, Northside Hospital is providing crucial bridge loan financing. The proceeds of that loan will be used to pay employee payroll, payments to landlords, and other essential expenses of the Business.

D. **Insurance Issues**

Respondent and the Business had over 45 life and disability insurance policies along with many insurance policies for the Business. The Receiver is working his way through the maze of insurance policies and relying heavily on support from insurance agents and brokers. Prior the Receiver's appointment, the Business was paying over $80,000 a month for various insurance policies. Some of the key issues the Receiver has been working on are as follows:

- Global One Financial. In 2020 and 2021, Respondent, on behalf of ENTI Surgery Center, LLC, executed promissory notes for $11,929,000 and $10,160,618, respectively, in favor of Global One Financial. These obligations were secured by security interests in five (5) life insurance policies owned by Respondent. These loans were in default prior to the Appointment Date. The Receiver negotiated a resolution of these obligations and surrendered five insurance policies with cash value and Global One waived certain Termination and Commitment Fees. The Receiver recovered $131,951.71 which was deposited into the Receiver's bank account and subsequently used to make payroll.

- <u>Loan Against Cash Value</u>. The Receiver researched and investigated the April and May 2023 transactions where Respondent withdrew $609,499 in cash value from nine life insurance policies on retired doctors and his two sons. The Receiver notes these funds could have been used to satisfy the DOJ at the time, but the funds were wired to his asset protection attorney and subsequently transferred to his Ameritrade account where Respondent lost $1.1 million in June of 2023.

- <u>Doctor's Life Insurance</u>. The Receiver has been reviewing and resolving problems with several of the Doctor's life insurance policies. In one situation, funds were withheld from payroll and not used to pay premiums. In another situation, funds were borrowed from the life insurance policies to pay premiums without the Doctors knowledge. Also, the business had two large life insurance policies on one doctor that resigned shortly after the Receiver's appointment. The Receiver cancelled policies with Lincoln Financial and recovered significant sums which were immediately used for necessary expenses.

- <u>Disability Policies</u>. The Receiver has reviewed the Affiliated Entities' disability insurance policies and cancelled coverage for Dr. Gallups and terminated employees.

- <u>Sale of Life Insurance Policies</u>. The Receiver engaged a broker to evaluate and sell some of the life insurance policies on retired doctors owned by the Affiliated Entities. The broker and Receiver spent a great dale of time reviewing the policies and the Receiver continue investigating the sale of the policies. The Receiver has contacted four of the doctors to see if they are interested in acquiring the policies before they are sold to third parties.

- <u>Overpaid Insurance</u>. In reviewing the Affiliated Entities insurance policies, the Receiver discovered that the Affiliated Entities were insuring a building that had been sold in 2020. The Receiver negotiated with the insurance carrier to get a refund, recovering $47,791.

- <u>Premium Payments and Adjustments</u>. The Business had very poor records on insurance policies and with a lack of financial and administrative staff, the Receiver has had difficulty tracking all polices and premiums. Earlier this month, the Receiver had a review of all policies with the primary broker and updated the list of locations and made adjustments to the polices. Review and analysis of insurance is on-going.

E. **Liabilities of Gallups and MHSA Receiver Estates**

- To clearly demonstrate the harsh reality of the two receiver estates, the Receiver has prepared an overview summary of liability of both the Respondent and MHSA. These two reports are marked as PRELIMINARY DRAFTS as the figures change rapidly and new information is uncovered daily. The current drafts show liabilities in excess of $27.9 million, summarized in Appendix "5" for Respondent ($16.9 million) and Appendix "6" for MHSA ($11 million). The figures on these reports are preliminary and will change and are provided at this stage of the case to assist the Court in understanding the sale of Business and sale of Florida Property will not satisfy all of Respondent's obligations.

F.  **Receiver and Special Master Fees**

As of March 15, 2024, the Receiver, Special Master, and their professionals are owed

unpaid fees totaling $842,894.08, as follows:

|   |   |   |
|---|---|---|
| a. | Receiver | $320,170.00 |
| b. | Counsel for Receiver | $243,630.49 |
| c. | Special Master | $208,193.74 |
| d. | Counsel for Special Master | $70,899.85 |

- Most of the fees for the Special Master and Counsel to the Special Master precede the appointment of the Receiver on August 16, 2023. The Special Master and Receiver professionals have received partial payments pursuant to Court Orders entered in the Receiver Order and in the Contempt Order. These fees were primarily paid out of asset recovered from Jeffry Gallups and not the Business.

G.  **Attorneys' Fees for Counsel for Petitioner**

As of February 29, 2024, Petitioner's counsel is owed $355,102.91 in attorneys' fees.

H.  **Present Challenges**

- <u>Payroll</u>. The Receiver has identified the Business's payroll obligation as key to the Business's continued operation. The payroll obligation is approximately $150,000 per week, paid every other week. Having available cash to satisfy the payroll obligation has been and continues to be a serious challenge. Since his appointment, the Receiver has made all payroll payments on time.

- <u>Back Office Operations/Accounts Servicing</u>. The Business has not had sufficient funds to pay its outside vendor providing back office and accounts servicing services. The vendor has threatened to discontinue services unless the Receiver can cure the payment arrearage. The Receiver is continuing to negotiate with the vendor to preserve this valuable service for the Business.

- <u>BCBS</u>. BCBS was the most significant insurance provider for the Business's patients and had terminated its original contract before the Receiver's appointment. The Receiver has been working with BCBS to restore full reimbursement participation. The process has been exceedingly slow, and total reimbursements owed to the Business on the new contract signed on November 19, 2023, grew to approximately $650,000,. The delay in receiving these funds has seriously impaired the Receiver's ability to operate the Business. On Friday, March 15, 2024, the Business received the first payments from the new BCBS contract.

- <u>Bridge Financing</u>. The Receiver had invested considerable time negotiating with an interested lender to obtain bridge financing to provide working capital until the Business could be sold. In mid-January 2024, that lender ceased discussions and withdrew its interest in providing financing to the Business. The Receiver continued to seek out bridge financing

18

to cover general capital expenditures. On March 14, 2024, the Court approved a bridge loan provided by Northside Hospital in connection with its purchase of substantial assets of the Receivership Estate.  That financing was crucial to the survival of the Business.

**V.**    **Receiver's Next Steps**

The Receiver is continuing to work to resolve the matters addressed above.  Additionally,

the Receiver's next steps include:

- Auctioning the Florida Property and personal property, with the goal of closing a sale by June 1, 2024.

- Continuing to market and sell the remaining Business and assets of the Affiliated Entities.

- Conducting discovery, including depositions of the Affiliated Entities' former officers, to determine possible claims on behalf of the Receivership Estate.

- Finalizing the accounting reports for 2023. The internal financial statements for 2023 will be filed with the court as soon as they are finalized. NOTE: The Business has never had audited financial statements.

- Paying the claims of the Government, including the IRS, the DOJ and the State of Georgia, and claims of GBC and the SBA as soon as funds are available from the sale of the Business's assets and the sale of the Florida Property.

- Resolving claims with landlords and other creditors to be prepared to make payments after the sale is finalized.

Respectfully submitted, March 20, 2024.

TAYLOR ENGLISH DUMA LLP


By:    */s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935
jrezac@taylorenglish.com

1600 Parkwood Circle, Ste. 200
Atlanta, Georgia 30339
678/336-7195
770/434-7376 (fax)

*Attorneys for S. Gregory Hays, Receiver*

**Appendix 1**

**Joint Status Report of The United States of America, The
State of Georgia, and S. Gregory Hays, Receiver**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MYRON JONES, M.D.; | ) ) ) |
| STATE OF GEORGIA *ex rel.* MYRON JONES, M.D.; and | ) ) ) |
| STATE OF TEXAS *ex rel.* MYRON JONES, M.D., | ) CIVIL ACTION FILE ) NO. 1:17-CV-2472-SDG ) ) |
| Plaintiffs-Relators, | ) ) |
| v. | ) ) |
| MILTON HALL SURGICAL ASSOCIATES, LLC, et.al. , | ) ) ) |
| Defendants. | ) ) |

## JOINT STATUS REPORT OF THE UNITED STATES OF AMERICA, THE STATE OF GEORGIA, AND S. GREGORY HAYS, RECEIVER

The United States of America and the State of Georgia (collectively, the "**Government**") and S. Gregory Hays, as Receiver of Defendant Milton Hall Surgical Associates, LLC ("**MHSA**") and Defendant Jeffrey Gallups, M.D. ("**Gallups**" and, together with MHSA, "**Defendants**") (the "**Receiver**") file this Joint Status Report in compliance with the Court's December 1, 2023, Order (Doc. No. 68) (the "**Mediation Order**"). The Government and the Receiver are referred to herein collectively as, the "**Parties.**"

The Mediation Order directed the Parties to engage in mediation to attempt to resolve their dispute concerning the Government's *Motion for Entry of Final Judgment* (Doc. No. 65).

United States Magistrate Judge Christopher C. Bly (the "**Mediator**") was assigned to mediate the resolution of the Parties' dispute, and mediation was scheduled for December 19, 2023. In advance of mediation, the Parties had considerable, substantive discussions, resulting in the general framework for a resolution. At the Mediator's suggestion, the Parties continued their discussions privately rather than engaging in formal mediation. The Mediator consulted with the Parties individually and collectively throughout these discussions.

As a result of these efforts, the Parties have reached an agreement for the resolution of their dispute. That resolution is set forth in a written settlement agreement executed by the Parties on February 26, 2024, and includes the following terms:[1]

- The Receiver consents to the entry of the Consent Judgment *instanter* in this case and the Government's filing of necessary pleadings, documents, liens or other perfection instruments in any jurisdiction respecting the Consent Judgment;

- The Receiver will move the Fulton County Superior Court in the Receivership Action for the entry of an order (the "Sales Proceeds

---

[1] This summary is for illustrative purposes only and does not limit or alter the terms of the Parties' written settlement agreement. The terms of the written settlement agreement shall control.

Distribution Order") designating that the Government has a super priority first lienholder position for $5,388.863.00 plus interest and costs;

• The Receiver consents to the Government's filing a new lien for the debt owed to the Government pursuant to the Consent Judgment or amending its current lien presently securing the payment of Gallups' criminal liability arising from *United States of America v. Jeffrey M. Gallups*, Case Number 1:21-CR-0370-SCJ (the "**Criminal Case**") to include the Consent Judgment debt;

• The Receiver shall take all commercially reasonable steps to continue marketing the business and assets subject to the Receivership Action *instanter*, including without limitation the real property known as 205 Hendricks Isle, Ft. Lauderdale, Florida 33301 (the "**Florida Property**");

• On or before June 1, 2024, and upon the Receiver's sale of the Florida Property and/or other Receivership assets, the Receiver shall pay the Government (i) first, the outstanding payoff amount of the debt due and owing to the Government under the *Qui Tam* Settlement and (ii) second, upon payment in full of the *Qui Tam* Debt, the outstanding payoff amount of the debt due and owing to the Government in the Criminal Case;

• The Receiver shall report monthly to the Government respecting the Receiver's steps and progress in the marketing and sale of the Receivership assets;

• If the Receiver does not consummate a sale or sales sufficient to pay the outstanding payoff amount of due and owing under the *Qui Tam* Settlement in full by February 29, 2024, the Consent Judgment debt of $5,388.863.00 plus post-judgment interest at the judgment rate, plus costs, less any amounts that have already been paid in connection with the *Qui Tam* Settlement, shall come due. However, the Government will stay enforcement activities related to the Consent Judgment and shall grant the Receiver an extension of time to pay the outstanding payoff amount due and owing under the terms of the *Qui Tam* Settlement until June 1, 2024;

• The Receiver and the Government shall confer in good faith to negotiate mutually acceptable terms for extending the time within which the Receiver may pay any remaining balance of the *Qui Tam* Debt; and

- All other terms of the *Qui Tam* Settlement and Consent Judgment shall remain in effect.

The Government believes that the Parties' settlement is in the best interests of the citizens of the United States and the State of Georgia. The Receiver believes that the Parties settlement is in the best interests of the Receivership Estate.

WHEREFORE, the Parties request that the Court enter the Consent Judgment *instanter* and grant the Parties such additional relief as the Court deems appropriate under the circumstances.

Respectfully submitted, February 29, 2024.

TAYLOR ENGLISH DUMA LLP

*/s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935
jrezac@taylorenglish.com
1600 Parkwood Circle, Ste. 200
Atlanta, Georgia 30339
O – (770) 434-6868
F – (770) 434-4335
*Attorneys for S. Gregory Hays, Receiver*

RYAN K. BUCHANAN
UNITED STATES ATTORNEY

*/s/ Vanessa A. Leo*
VANESSA A. LEO
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 410598
600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303
(404) 581-6350

[Vanessa.Leo@usdoj.gov](mailto:Vanessa.Leo@usdoj.gov)

THE STATE OF GEORGIA,
DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL CHRIS CARR
MEDICAID FRAUD DIVISION

*/s/ Jim Mooney*
JIM MOONEY
DEPUTY ATTORNEY GENERAL
Georgia Bar No. 940402
600 West Peachtree Street, NW
20th Floor
Atlanta, Georgia 30308
(404) 458-3805
[JMooney@LAW.GA.GOV](mailto:JMooney@LAW.GA.GOV)

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing document has been typed using 13-point Book Antiqua font.

February 29, 2024.

By:    */s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935
jrezac@taylorenglish.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2021, I electronically filed the foregoing document using the Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to all parties who have appeared in this case under the Court's Electronic Case Filing program.

February 29, 2024.

By:    */s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935
jrezac@taylorenglish.com

**Appendix 2**

**Receiver Paid Personal Expenses of Jeffrey Gallups**

**Receiver Estate of Jeffrey M. Gallups**
Expenses paid by Receiver for Jeffry Gallups and Hendircks Trust
3/15/2024

| Vendor | Type | Amount | Paid/Date | Notes re Expenses |
|--------|------|--------|-----------|-------------------|
| **Gallups Expenses Paid by Receiver** | | | | |
| Florida Power (FPL) | Power Service | $456.75 | 1/4/2024 | |
| True Property Ins | Property Insurance | $4,444.77 | 11/16/2023 | |
| City of Ft. Lauderdale | Water/Sanitation | $378.25 | 12/29/2023 | |
| True Property Ins | Property Insurance | $4,444.77 | 1/17/2024 | |
| Teco Peoples Gas | Gas Service | $54.57 | 1/24/2024 | |
| Florida Power (FPL) | Power Service | $408.21 | 1/25/2024 | |
| City of Ft. Lauderdale | Water/Sanitation | $216.71 | 1/25/2024 | |
| Hendricks Isle HOA | Quarterly HOA Fee | $2,065.00 | 2/6/2024 | |
| Cool Pools Service | Pool Maintenance | $120.00 | 2/7/2024 | |
| Teco Peoples Gas | Gas Service | $47.16 | 2/28/2024 | |
| Florida Power (FPL) | Power Service | $386.15 | 2/28/2024 | |
| City of Ft. Lauderdale | Water/Sanitation | $197.52 | 2/28/2024 | |
| United Restoration | Roof Repair Deposit | $4,410.00 | 3/7/2024 | |
| State Farm Insurance | Auto Insurance | $2,313.57 | 3/14/2024 | |
| Cool Pools Service | Pool Maintenance | $305.00 | 3/14/2024 | |
| | | **$20,248.43** | | |
| | | | | |
| **Other Gallups Expenses Paid by Receiver** | | | | |
| United Healthcare | Medical Insurance | $10,562.56 | Aug 2023-Mar 2024 | Paid by MHSA |
| Mass Mutual | Life Insurance | $10,000.00 | | **Estimated - paid by MHSA** |
| Department of Justice | | $258,000.00 | | Paid by MHSA |
| Nancy Jennings | alimony | $130,000.00 | | Paid by Receiver |
| | | **$408,562.56** | | |
| | | | | |
| | **Total Paid** | **$428,810.99** | | |
| | | | | |
| **Gallups Expenses Payable** | | | | |
| First Horizon | Mortgage | $56,238.90 | 5 Months in Arrears | |
| Nancy Jennings | Alimony | $325,000.00 | 5 months in Arrears | |
| Broward County Tax | Real Estate Taxes | $68,660.94 | Due 3/31/24 | |
| Truist Visa Signature | Credit Card | $12,681.00 | | |
| Teco Peoples Gas | Gas Service | $44.25 | Due 3/27/24 | Received invoice 3/7/2024 |
| City of Ft. Lauderdale | Water/Sanitation | $197.52 | Due 4/2/24 | |
| Wiggam Law | Tax Attorney Fees | $4,737.99 | 3/8/2024 | IRS Attorney |
| United Restoration | Roof Repair Balance | $5,390.00 | Due at completion | Roof repair on Hendricks Isle |
| Stampler Auctions | Auction of Assets | $5,165.00 | | Estimated expense budget for auction |
| Fisher Auction Co. | Marketing Expenses | $24,893.00 | | Marketing/Sale of the property |
| | **Total Pending** | **$503,008.60** | | |
| | | | | |
| | **Total Paid & Pending Payments for Gallups** | **$931,819.59** | | |

**Appendix 3**

**Correspondence Respecting Florida Property**

## John K. Rezac

| | |
|---|---|
| **From:** | John K. Rezac |
| **Sent:** | Thursday, March 7, 2024 6:30 PM |
| **To:** | Scott R. Grubman, Esq.; Lauren A. Warner, Esq. |
| **Subject:** | Jennings v Gallups: Receivership |
| **Attachments:** | Gallups Group Receiver. Letter to Dr. Gallups to Surrender FL Property (02747262xBE13C).pdf |

Good afternoon, Scott and Lauren.

Please see the attached letter to Dr. Gallups.

Thank you.

John



**John K. Rezac**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7195  | M: 678.643.1357 | jrezac@taylorenglish.com
Website | LinkedIn

**Ask Me About Our TED Tenet of the Week: Avoid Unpleasant Surprises.**

Click here to learn more about our TED Tenets.

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

t a y l o r | e n g l i s h     Taylor English Duma LLP 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 **taylorenglish.com**

John K. Rezac
Direct Dial: 678.336.7195
jrezac@taylorenglish.com

March 7, 2024

**Via Electronic Mail to _sgrubman@cglawfirm.com_**
**and _lwarner@cglawfirm.com_**

**To:** Dr. Jeffrey Gallups
**c/o** Scott R. Grubman, Esq.
Lauren A. Warner, Esq.
Chilivis Grubman, LLP
1834 Independence Sq.
Atlanta, Georgia 30338

  RE:   **S. Gregory Hays, as Receiver of Jeffrey Gallups et al.**

     *Nancy Jennings v. Jeffrey Gallups*
     **Civil Action No. 2020CV337822**
     **Superior Court of Fulton County, Georgia (the "Court")**

Dear Dr. Gallups:

  Pursuant to the Court's August 16, 2023, <u>Order Compelling Compliance, Appointing
Receiver, and Granting Injunctive Relief</u> and October 2, 2023, <u>Order on Respondent's
Compliance to Purge Contempt</u>, you are required to surrender to S. Gregory Hays, as Receiver
(the "Receiver") (1) the real property identified as 205 Hendricks Isle, Ft. Lauderdale, FL 33301
(the "Florida Property") and (2) tangible items, including without limitation guns, pens, guitars,
art, and furniture (the "Personal Property"), and the Receiver is authorized to list the Florida
Property for sale, sell the Florida Property and the Personal Property, and apply the proceeds of
the sale to satisfy the mortgage, closing costs, your federal tax obligations, and sums you owe
under court orders and otherwise for the benefit of the Receivership Estate.

  The Receiver is advised that the mortgage lender, First Horizon Bank, has begun
foreclosure proceedings respecting the Florida Property.  Further, settlement of the Unites States
Department of Justice/State of Georgia's civil judgment against you requires payment of the
outstanding settlement balance no later than June 1, 2024.  Accordingly, the Receiver must sell
the Florida Property expeditiously.

  The Receiver hereby demands that, on or before April 1, 2024, you vacate the Florida
Property and surrender to the Receiver possession of the Florida Property, including all Personal

taylor | english

Dr. Jeffrey Gallups
c/o Chilivis Grubman LLP
March 7, 2024
Page 2

Property.   The Receiver demands further that you refrain from damaging or removing any Personal Property.

Please confirm in writing to me no later than 5:00 P.M., March 15, 2024, that you will comply with the demand to vacate and surrender possession.

Thank you.

Sincerely,

John Rezac

TAYLOR ENGLISH DUMA LLP

## John K. Rezac

| | |
|---|---|
| **From:** | Scott R. Grubman <SGrubman@cglawfirm.com> |
| **Sent:** | Thursday, March 7, 2024 8:10 PM |
| **To:** | John K. Rezac |
| **Cc:** | Lauren Warner |
| **Subject:** | Re: Jennings v Gallups: Receivership |

◎ External email ›

◎ Contains topics of a financial nature ›

John,

Given the fact that your client hasn't paid Dr. Gallups a penny, and he now doesn't even babe enough money to eat, where do you recommend he live once you kick him out of his house?

I am VERY close to advising Dr. Gallups to file a federal RICO and civil rights lawsuit against your client, your firm, and you.

You need to resend to this asap or we are going to cross a line we won't be able to cross back over again. This is your last warning.

**Scott R. Grubman**
Chilivis Grubman
404.262.6505 | sgrubman@cglawfirm.com | bio

On Mar 7, 2024, at 6:30 PM, John K. Rezac <jrezac@taylorenglish.com> wrote:

Good afternoon, Scott and Lauren.

Please see the attached letter to Dr. Gallups.

Thank you.

John

**John K. Rezac**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7195  | M: 678.643.1357 | jrezac@taylorenglish.com
Website | LinkedIn

<image001.jpg>

**Ask Me About Our TED Tenet of the Week: Avoid Unpleasant Surprises.**

Click here to learn more about our TED Tenets.

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

<Gallups Group Receiver. Letter to Dr. Gallups to Surrender FL Property (02747262xBE13C).pdf>

## John K. Rezac

| | |
|---|---|
| **From:** | Scott R. Grubman <SGrubman@cglawfirm.com> |
| **Sent:** | Wednesday, March 13, 2024 5:00 PM |
| **To:** | John K. Rezac; Lauren Warner |
| **Cc:** | Greg Hays; Frank Strickland |
| **Subject:** | Re: Jennings v Gallups: Receivership |

⊙ External email ›

⊙ Contains topics of a financial nature ›

Funny that the receiver has funds to pay himself, his lawyers, the Special Master (who work at the same firm as his lawyers), and apparently now potentially Dr. Gallups prior attorney Pete Hasbrook, but not have even one single penny to pay Dr. Gallups for food and shelter.

I am really at a lost as to how y'all think this is even close to being appropriate. To make it clear, I believe you are opening yourselves up to federal Section 1983 liability, and I think we will clearly be able to show that you acted recklessly, which would strip you of any immunity you may have. Since you copied your client on this email, I want to make sure he understands that, because I do not think his attorneys are giving him good advice here, or maybe they are, and he's choosing to ignore it.

Just because Dr. Gallups may have done some unfortunate things in the past, doesn't mean he doesn't have rights. He absolutely does, and we will enforce those rights if it's the last thing we do.

Govern yourselves accordingly.

**Scott R. Grubman**
Chilivis Grubman
404.262.6505 | SGRUBMAN@CGLAWFIRM.COM | BIO

---

**From:** John K. Rezac <jrezac@taylorenglish.com>
**Date:** Wednesday, March 13, 2024 at 4:56 PM
**To:** Lauren Warner <lwarner@cglawfirm.com>, Scott R. Grubman <SGrubman@cglawfirm.com>
**Cc:** Greg Hays <ghays@haysconsulting.net>, Frank Strickland <fstrickland@taylorenglish.com>
**Subject:** RE: Jennings v Gallups: Receivership

Thank you for your email, Lauren.

We are finalizing the terms of the prospective sale of a portion of the receivership assets and anticipate filing the motion today if possible. I will send you and Scott a service copy by email immediately once it's filed.

The receivership estate does not have funds to pay Dr. Gallups's living expenses. Dr. Gallups drained the business of millions of dollars in cash prior to the Court's appointment of the Receiver. The receivership estate has not had funds to pay the business's creditors, including landlords. Available cash has gone to payroll and expenses essential to the survival of the business.

Additionally, it now appears that Dr. Gallups has removed property of the receivership estate from the Florida property, without permission and in violation of the Court's Receivership Order. Despite Mr. Hays's inquiry to Dr. Gallups, no explanation has been given.

Under these circumstances, the Receiver will not be providing any money for Dr. Gallups's living expenses.

Dr. Gallups agreed in open court on October 2, 2023, to surrender the Florida property. The Court entered the *Order on Respondent's Compliance to Purge Contempt*, providing for Dr. Gallups's surrender of the Florida property, on October 12, 2023. Dr. Gallups has had five (5) months to find alternative housing and has been living mortgage/rent-free during that time. Any timing challenges he faces now are of his own making. He must be out of the Florida property by or before April 1, 2024.

Thank you.

John



**John K. Rezac**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7195  | M: 678.643.1357 | jrezac@taylorenglish.com
Website | LinkedIn

**Ask Me About Our TED Tenet of the Week: Avoid Unpleasant Surprises.**

Click here to learn more about our TED Tenets.

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**From:** Lauren Warner <lwarner@cglawfirm.com>
**Sent:** Wednesday, March 13, 2024 4:31 PM
**To:** John K. Rezac <jrezac@taylorenglish.com>; Scott R. Grubman <SGrubman@cglawfirm.com>
**Subject:** RE: Jennings v Gallups: Receivership

John,

Dr. Gallups will need a place to live. Your letter asks him to vacate the property in less than 30 days without any information about funds for housing, a budget for housing, or a timeline for when any such funds will be provided. As you know, even to rent an apartment, Dr. Gallups would need at least 2-3 month's rent and proof of any income he will receive under the Receivership. The Receivership includes his personal assets, so he is entitled to a housing allowance and money for living expenses. Dr. Gallups has sent numerous requests over the past several weeks requesting money for food and other basic necessities which he has not received since the Receivership began. He cannot be asked to leave his house without a plan and funds for housing.

Please respond to this email so we can figure out how to move forward. Dr. Gallups has received scant responses to his emails and you have not responded to any of Scott's emails.

Based on an email from the Court today regarding a telephone conference tomorrow, there now appears to be a potential sale of a portion of Dr. Gallups's medical practice. We have not received any information about a potential sale. Dr. Gallups is entitled to such information, which is apparently being shared with only one party to this litigation,

Dr. Jennings, but not with Dr. Gallups. Please provide me with information about that potential sale in advance of our conference tomorrow.

Lauren



**Lauren A. Warner | Partner**
**CHILIVIS GRUBMAN**
1834 Independence Square | Atlanta, Georgia  30338
**Main:** 404.233.4171 | **Direct:** 404.262.6506 | **E:** lwarner@cglawfirm.com

Confidentiality Notice
This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.  This communication may contain information that is proprietary, privileged or confidential, or otherwise legally protected from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by return e-mail and delete all copies of the message.

**From:** John K. Rezac <jrezac@taylorenglish.com>
**Sent:** Thursday, March 7, 2024 6:30 PM
**To:** Scott R. Grubman <SGrubman@cglawfirm.com>; Lauren Warner <lwarner@cglawfirm.com>
**Subject:** Jennings v Gallups: Receivership

Good afternoon, Scott and Lauren.

Please see the attached letter to Dr. Gallups.

Thank you.

John



**John K. Rezac**
**Taylor English Duma LLP** | 1600 Parkwood Circle, Suite 200, Atlanta, GA 30339
P: 678.336.7195  | M: 678.643.1357 | jrezac@taylorenglish.com
Website | LinkedIn

**Ask Me About Our TED Tenet of the Week: Avoid Unpleasant Surprises.**

Click here to learn more about our TED Tenets.

This communication (together with all attachments) may contain privileged or confidential information, and its sender reserves and asserts all rights that may apply to it. If you are not the intended recipient or believe that you have received this communication in error, please do not print, copy, retransmit, disseminate or otherwise use the information. Also, please indicate to the sender that you have received this communication in error and delete the copy you received. If you have not executed an engagement letter with this firm, we do not represent you as your attorney and no duties are intended or created by this communication. Most legal rights have time limits, and this e-mail does not constitute advice on the application of limitation periods unless otherwise so expressly stated.

**Appendix 4**

**Document First Produced March 7, 2024**

May 11, 2023

205 Hendricks Isle Fort Lauderdale, FL 33301

Marital Assets Belonging to Melissa Shlien-Moritz


**First Floor:**

Entire Kitchen Contents

Glass Dining Table & 6 Chairs

Coffee Table configuration (2 items)

4 Barstool w/ Silver foot rails

One Mirror in half-bath

Contents in pantry closet

Contents in Coat Closet

Circular Rug

Gas Grill


**Second Floor:**

Living Room Rug, Sectional Electronic Sofa,

Floor Lamp

2 Chairs

TV on Mounted on Wall with sound system

Washer & Dryer

Contents from Closets

2 Teen Bedrooms entire contents: Beds, Lamps, Rugs, LoveSac, Hanging Chair, Mirrors

Closets- all contents

4 Sonos Sound Bars




<u>Third Floor:</u>

**Master Bedroom**

>    Master Bed with Headboard, 1 bench

>    Master Dresser, 2 Side tables

>    One Glass Desk with Black Chair

>    Area Rug

Peloton

4 Lamps

All Articles of Clothing, Bins of storage, Bathroom items

2 Blue Chairs, 1 Bench

2 mirrors on third floor

Keyboard

Canon Color Printer

**Third Floor Balcony:**

2 Chairs, 1 Outside Coffee Table

**Garage:**

ALL CONTENTS

Bikes, Beach Chairs, Storage Bins, Fishing Poles, Gardening Items, Tools, Ladders etc

2 paddle boards with oars

Floating water pad

 

**Other House Contents:**

All linens, pillows, blankets, towels, personal items in closets

Melissa Shlien- Moritz

Jeffrey Gallups

**Appendix 5**

**Personal Liabilities of Respondent**

**Receiver Estate of Jeffrey M. Gallups**
**Gallups Personal Liabilities**
March 20, 2024

<span style="color:red">DRAFT AND SUBJECT TO CHANGE / INCLUDES ESTIMATED FIGURES</span>

| Vendor | Type | Amount | Paid / Due Date | Notes |
|---|---|---|---|---|
| **Credit Card Bills** | | | | |
| American Express | Account x92000 | $329,781 | | Balance from March 2023 |
| American Express Gold | Account x46008 | $27,320 | | Last payment October 2022 |
| Macy's Amex | Account x8545 | $189 | | Last statement is October 2023 |
| Truist Visa Signature | Credit Card | $12,619 | | Minimum payment of $518 is past due |
| | | **$369,909** | | |
| | | | | |
| **Secured Creditor Loans & Deficiencies** | | | | |
| First Horizon Mortgage | Mortgage | $2,720,000 | | Payoff of loan per Counsel to First Horizon |
| First Horizon on Boat | Surrendered collateral | $100,000 | | Estimated. Boat to be auctioned by First Horizon |
| Truck Loan Deficiency | Surrendered collateral | $0 | | Unknown |
| | | **$2,820,000** | | |
| | | | | |
| **Professional Fees** | | | | |
| Stephano Slack | Tax Accountants | $3,750 | | 2022 Tax Return |
| Stephano Slack | Tax Accountants | $1,000 | | Amended 2021 Tax Return |
| Stephano Slack | Tax Accountants | $1,500 | | General tax and accounting fees |
| Wiggam Law | IRS Counsel | $1,407 | | Payment due 2/7/2024 |
| Chilivis Grubman | | $50,889 | | Per 10/2/23 Contempt Order. |
| Martenson, Hasbrouck | | $0 | | Included in MHSA company payables |
| | | **$58,546** | | |
| | | | | |
| **Alimony** | | | | |
| Current Alimony Payable | Alimony | $325,000 | | 5 Months in Arrears |
| Nancy Jennings Legal Fees | Alimony | $0 | | Included in MHSA payables in Appendix 3 |
| Divorce Settlement | Alimony | $10,250,000 | | Paid from Gallups Equity from Sale of Entities |
| Interest pursuant to transfer | Alimony | $785,833 | | Prime 8.5% plus 3.0% int since 8/7/23 transfer |
| | | **$10,575,000** | | |
| | | | | |
| **Government Agencies** | | | | |
| Department of Justice | Government Claim | $344,000 | | To be paid from sale of house. |
| DOJ Criminal Lien | Government Claim | $750,000 | | Lien filed in July 2022. Before IRS lien |
| IRS for 2021 and 2022 | Government Claim | $2,000,000 | | Lien filed for 2021. Est. per Wiggam Law |
| IRS for 2023 | Government Claim | $0 | | Estimated federal taxes for 2023 |
| State of Georgia | Government Claim | $400,000 | | Estimated state taxes per Wiggam Law |
| | | $3,494,000 | | |
| | | | | |
| **Total Payable** | | **$16,947,546** | | |

**Appendix 6**

**Liabilities of Receiver Entities**

**Receiver Estate of Milton Hall Surgical Associates, LLC et al.**
**Liabilities of the Receiver Entities**
**March 20, 2024**

**DRAFT AND SUBJECT TO CHANGE / INCLUDES ESTIMATED FIGURES**

| Vendor | Type | Amount | Paid / Due Date | Notes |
|--------|------|--------|-----------------|-------|
| **Accounts Payable** | | | | |
| Milton Hall Management | Accounts Payable | $6,104,491 | | As of 3/14/24 |
| ENT | Accounts Payable | $49,897 | | As of 3/14/24 |
| HCENTI | Accounts Payable | $100,536 | | As of 3/14/24 |
| Doctors Contract Pmts | Contract | $350,000 | | Was due in January |
| Dr. Lloyd payment | Contract | $58,333 | | Contract dated 8/7/23. $100K annual. |
| Dr. Karen contract | Contract | $70,000 | | Moving costs and settlement |
| Starkey Hearing Techology | Trade | $32,479 | | Understated on AP report |
| Martenson Hasbrouck | Professional | $21,045 | | Understated in AP. Balance per Court Order |
| CFGI Understated in AP | Professional | $46,500 | | Invoices provided by CFGI |
| MWE Understated in AP | Professional | $149,827 | | Invoices provided by MDE. |
| American Express | Credit Card | $320,942 | | Current Business AMEX card |
| | | **$7,304,050** | | |
| **Lease Rejection Claims** | | | | |
| LaGrange Med Ventures | Landlord | $1,845,520 | | LaGrange lease termination damage claim |
| Smyrna | Landlord | $0 | | Potential Lease termination claim |
| Dawsonville | Landlord | $0 | | Potential Lease termination claim |
| Occonee | Landlord | $0 | | Potential lease termination claim |
| | | **$1,845,520** | | |
| **Secured Creditors** | | | | |
| Small Business Admin. | Secured | $160,000 | | Filed UCC |
| Georgia Banking Corp. | Secured | $514,000 | | Filed UCC |
| Secured Claims | | **$674,000** | | |
| **Professional Fees of Special Master, Receiver and Plaintiff** | | | | |
| Special Master | Professional Fees | $208,193 | | Fees Outstanding as of 2/29/24 |
| Counsel to Sepcial Master | Professional Fees | $70,890 | | Fees Outstanding as of 2/29/24 |
| Receiver | Professional Fees | $320,170 | | Fees Outstanding as of 2/29/24 |
| Counsel to Receiver | Professional Fees | $243,630 | | Fees Outstanding as of 2/29/24 |
| Counsel to Plaintiff | Professional Fees | $355,000 | | Fees Outstanding as of 2/29/24 |
| | | **$1,197,883** | | |

| | |
|---|---|
| Total MHSA Receiver Entity Liabilities (above) | $11,021,453 |
| Total Gallups Liabilities (see prior Appendix) | $16,947,546 |
| **Total Receiver Estates Liabilities** | **$27,968,999** |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this day filed the foregoing document with the Court using

the Court's electronic filing system, which will automatically email a copy on all registered users,

and have served a copy upon the following persons by e-mail, as follows:

> C. Knox Withers <Knox.Withers@agg.com>;
> Elizabeth Green Lindsey, Esq. <elindsey@harrisonllp.com>;
> Frank B. Strickland, Esq. <fstrickland@taylorenglish.com>;
> Gregory M. Taube <gmt@nmrs.com>;
> Jack Cartwright Esq. <cartwright@khlawfirm.com>;
> Jessica G. Cino Esq. <cino@khlawfirm.com>;
> Jordan B Forman <jforman@foxrothschild.com>;
> Laura Ketcham <Laura.Ketcham@millermartin.com>;
> Lauren A. Warner, Esq. <lwarner@cglawfirm.com>;
> Melissa A. Campbell <mcampbell@bakerdonelson.com>;
> Michael P. Kohler <Michael.Kohler@millermartin.com>;
> Peter A. Durham, Esq. <pdurham@gloverdavis.com>;
> S. Nathaniel De Veaux, MBA <ndeveaux@kkgpc.com>;
> Scott R. Grubman, Esq. <sgrubman@cglawfirm.com>;
> Sean C. Kulka <Sean.kulka@agg.com>;
> Tim Colletti <tcolletti@bakerdonelson.com>;
> Vanessa A. Leo <Vanessa.Leo@usdoj.gov>
> Jim Mooney <JMooney@LAW.GA.GOV>
> David Brown, Esq. <dkbrown@bakerlaw.com>

March 20, 2024.

By:     */s/ John K. Rezac*
         JOHN K. REZAC