## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

In re:                                                   Case No. 24-12653-SMG

JEFFREY MARK GALLUPS                          Chapter 7

_____Debtor._____ /

### TRUSTEE'S EXPEDITED MOTION TO APPROVE SALE OF REAL PROPERTY LOCATED AT 205 HENDRICKS ISLE, FORT LAUDERDALE, FL 33301, AND OTHER RELATED RELIEF

**Basis for expedited relief: The Trustee requests a hearing on or before December 11, 2024, as the buyer is buying the property subject to §1031 exchange that has certain strict deadlines for consummating the sale.**

Trustee, Sonya S. Slott ("**Trustee**"), by and through undersigned counsel, hereby moves this Court to approve the sale of real property located at 205 Hendricks Isle, Fort Lauderdale, FL 33301, pursuant to 11 U.S.C 363(f) and other related relief and states as follows:

1.      On March 13, 2024 (the "**Petition Date**"), Debtor commenced the instant bankruptcy case with the filing of a voluntary petition for relief under Chapter 7, Title 11 of the United States Bankruptcy Code.

2.      Sonya S. Slott is the duly appointed and acting Chapter 7 Trustee of the Debtor's bankruptcy estate (the "**Estate**").

3.      Jeffrey Gallups (the "**Debtor**") through his revocable trust, the Hendricks Trust dated January 1, 2021 ("**Trust**"), is the owner of real property located at 205 Hendricks Isle, Fort Lauderdale, FL 33301 (the "**Property**"), more particularly described as follows:

> A portion of Lots 8 and 9, Block 3, Victoria Isles, according to the plat thereof as recorded in Plat Book 15, Page 67, Public Records of Broward County, Florida, more fully described as follows:

1

Commencing at the Southeast corner of Lot 8, of said Block 3; thence North 54.72 feet to the Point of Beginning; thence West a distance of 125 feet; thence North a distance of 44.82 feet; thence East a distance of 125 feet; thence South a distance of 44.82 feet to the Point of Beginning.

4.      Neither the Property nor the Trust have been claimed as exempt on the Debtor's schedules.

5.      The Court entered an Order Approving the Employment of Lamar Fisher and Fisher Auction Co., Inc. [ECF #53] on April 25, 2024 (the "Broker")

6.      After the Broker listed and extensively marketed the Property for sale, the Trustee received an offer to consummate a sale of the Property.

7.      The highest and best offer for the Property was from Myers Family Exempt Trust (the "**Purchaser**" or "**Myers**") for a proposed purchase price of $3,600,000.00. A true copy of the "As Is" Residential Contract for Sale and Purchase of the Real Property and all addendums (collectively, the "**Sale Contract**") are attached hereto as composite Exhibit "A".   The Purchaser is not an insider of the Debtor.

8.      This is the highest and best offer that the Broker has received, and in his professional experience in marketing real property in Florida, including in many previous cases before this Court, the offer is well in line with the current market prices for similar properties in the area.

9.      The Trustee, Broker, and Purchaser have agreed to the terms of the Sale Contract, the Primary material terms of which are as follows:

    a.  **Purchase Price**: $3,600,000.00;

    b.  **Terms**: As-is, where-is, with no representations or warranties of any type given by the Trustee, but free and clear of all liens, claims and encumbrances;

    c.  **Closing Date**: no later than 15 days after entry of Court order;

d. **Commission**: $144,000.00 the ("**Commission**") to the Brokers, which equals 4% of the Purchase Price;

e. **Payment to Estate**: The net sale proceeds due to the Estate are estimated in good faith at roughly **$359,992.35**, subject to adjustment through closing, a total including the proposed payment of $25,000.00 to the United States Attorney of Northern District of Georgia ("**AUSA**"), on behalf of the Department of Justice of the United States ("**DOJ**"), for its criminal restitution judgment.  However, all net proceeds of sale shall be escrowed pending receipt by the DOJ of a final ALTA statement.

f. **No financing contingency**-

g. **No sale contingency**-

h. **Subject to Bankruptcy Court approval**; and

i. **Subject to higher and better offers**.

### *Liens, Claims and Encumbrances Against the Property*

10.    Except as otherwise set forth in the Sale Contract, pursuant to section 363(f) of the Bankruptcy Code, the sale of the Pompano Beach Property shall be free and clear of any and all liens, claims, encumbrances, lis pendens, rights of possession, contracts, covenants, options or other rights to acquire any interest in the Property, interests and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise,

3

including without limitation, any right of setoff, recoupment, netting or deduction (collectively, the "**Liens and Encumbrances**").

11.    Furthermore, the estimated payoffs[1] necessary to satisfy the alleged Liens and Encumbrances against the Property, and the proposed treatment of same pursuant to the proposed sale, are set forth below:

| Claimant | Nature of Lien, Claim or Encumbrance | Amount | Proposed Disposition at Closing |
|---|---|---|---|
| **First Horizon Bank ("Mortgage")** | **Mortgage recorded at instrument 117253423** | **$2,965,765.00** | **Payment of $2,965,765.00 subject to adjustment and receipt of a proper payoff letter** |
| **United States Attorney for Northern District of Georgia ("Criminal Lien")** | **Judgment recorded in Instrument 118249323** | **$725,244.33** | **Payment reduced by agreement to $25,000.00, with the all net sale proceeds to be held in escrow subject to the United States Attorney reviewing the final ALTA statement** |
| **Internal Revenue Service ("Tax Lien")** | **Judgement recorded in Instrument 118851800** | **$1,696,296,93** | **$0.00, to be subordinated pursuant to §724(b)** |
| **Acqua Marina HOA ("HOA")** | **Past-due HOA dues** | **$6,270.00** | **Payment of $6,270.00** |
| **Broward County Tax Collector ("Broward County")** | **2024 Property Taxes** | **$67,643.95** | **Payment of $67,643.95** |
| **United Restoration & Waterproofing** | **Notice of Commencement recorded in Instrument 119507786** | **$0.00** | **$0.00, payment already made in full** |

12.    Any other charges are comprised of normal and customary closing costs involved in a residential real estate transaction, as set forth in the ALTA Settlement Statement, which is as attached as Exhibit "B" and may be updated prior to the sale hearing and the closing of the sale.

---

[1] The amounts listed here are good faith estimates and will be updated at closing as official payoffs and estoppels are obtained.

### *Relief Requested*

13.    The Trustee requests that the Court approve the sale of the Property to the Purchaser, pursuant to 11 U.S.C. § 363(f), free and clear of any and all liens, claims and encumbrances, upon the terms set forth above. The Trustee also requests that the Court authorize the Trustee to enter into the Contract and approve the payment of the Commission to the Real Estate Broker.

14.    11 U.S.C. § 363(b) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

15.    Additionally, 11 U.S.C. § 363(f) permits the Trustee to "…sell property under subsection (b) … of this section free and clear of any interest in such property of an entity other than the estate, only if –

      (1) Applicable non-bankruptcy law permits sale of such property free and clear of such interest;
      (2) Such entity consents'
      (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
      (4) Such interest is in bona fide dispute; or
      (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest"

16.    Pursuant to §363(f)(2), the Trustee may sell free and clear of the Mortgage, HOA, Criminal Lien, and Broward County as each entity has consented to the sale by receiving a full payment of their outstanding debt (in the case of the DOJ, payment in full of agreed reduced amount).

17.    Pursuant to §363(f)(5) and §724(b), the Trustee may sell the property free and clear of the Tax Liens since there a proceeding in which the United States could be compelled to accept money satisfaction of its lien. *See In re Hamilton Rd. Realty LLC*, 2021 Bankr. Lexis 1114, •21-22 (Bankr. EDNY 2021) ("[B]ecause the Trustee may utilize Bankruptcy Code § 724(b) to

subordinate the tax liens encumbering the Property, which will result in receipt of money by the Tax Lienors in exchange for their liens, there is a proceeding by which the United States may be compelled to accept a monetary satisfaction of its interests in the Property").

18.    Furthermore, the Trustee requests that at closing, the Purchaser is deemed to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), provided that the Purchaser has complied with all requirements of the Contract.

19.    Any party wishing to submit a higher and better offer for the Property shall be required to: (a) submit a written offer to the Trustee no later than five (5) business days prior to the Sale Hearing; and (b) tender a $360,000.00 bid deposit[2], in cleared funds to the Trustee, no later than five (5) business days prior to the Sale Hearing.  Further, any offer must be at least $25,000.00 higher than the Purchaser's Offer (the "**Initial Overbid**").  The Trustee recommends that the bidding be conducted at the Sale Hearing in $10,000.00 minimum increments for any bids after the Initial Overbid.

20.    Further, unless otherwise ordered by this Court, any successful bidder other than the Purchaser must confirm on the record at the Sale Hearing, that it is willing to purchase the Property on the terms and conditions set forth in this Motion, and be ready, willing and able to close within three (3) business days of entry of the Final Sale Order.

21.    If there is a conflict between the terms of this Motion and the terms of the Contract, then the terms of the Contract shall control.

22.    The Trustee, exercising her business judgment, believes that the sale of the Property to the Purchaser is in the best interest of the bankruptcy estate.

---

[2] If the bidder is not the successful bidder or the back-up bidder, the deposit shall be refunded.

23.    The Trustee requests that the Court provide the Trustee with the authority to close the sale, disburse the sales proceeds as set forth in the ATLA Settlement Statement, and execute any and all documents necessary to consummate the closing including but not limited to a Trustee's Deed and Bill of Sale.  Further, the Trustee requests authority to execute any documents necessary on behalf of the Trust to effectuate the sale.

24.    The Trustee requests that the Court waive the 14-day stay period pursuant to Fed. R. Bankr. P. 6004(h) so that the sale may timely close.

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (a) approving the sale of the Property to the Purchaser; (b) authorizing the Trustee to enter into the Contract; (c) approving the payment of the Commission to the Real Estate Broker upon closing; and (d) granting such other and further relief as the Court deems just and proper.

Dated:  November 27, 2024                                   By: /s/ Zachary Malnik, Esq.
                                                            Zachary Malnik, Esq.
                                                            FBN 1010272

                                                            The Salkin Law Firm, P.A.
                                                            *Counsel to the Trustee*
                                                            P.O. Box 15580
                                                            Plantation, Florida 33318
                                                            954-423-4469

# EXHIBIT A



# "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1* **PARTIES:** Sonya S. Slott, solely in her capacity as Ch. 7 Trustee _____ ("Seller"),
2* and _____ MEYERS FAMILY EXEMPT TRUST _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):

6  **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _205_ HENDRICKS ISLE ____ FORT LAUDERDALE ___ 33301
8*   (b) Located in: ___ BROWARD ___ County, Florida. Property Tax ID #: ___ 5042 02 19 0391 ___
9*   (c) Real Property: The legal description is
10     VICTORIA ISLES 15-67 B POR OF LOT 8,9 BLK 3 DESC AS: COMM SE COR OF SAID LOT 8,N 54.72 TO POB,W 125,N
11     44.82,E 125,S 44.82 TO POB AKA:UNIT 205
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), light fixture(s), drapery rods
18     and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), thermostat(s), doorbell(s),
19     television wall mount(s) and television mounting hardware, security gate and other access devices, mailbox
20     keys, and storm shutters/storm protection items and hardware ("Personal Property").
21*    Other Personal Property items included in this purchase are: _____
22     _____
23     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
24*   (e) The following items are excluded from the purchase: _____
25     _____

26                              **PURCHASE PRICE AND CLOSING**

27*  **2. PURCHASE PRICE** (U.S. currency):............................................................ $ _3,600,000.00_
28*   (a) Initial deposit to be held in escrow in the amount of **(checks subject to Collection)** ........... $ _3,600,000.00_
29     The initial deposit made payable and delivered to "Escrow Agent" named below
30*    **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☐ is to be made within _____ (if left blank,
31     then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
32     SHALL BE DEEMED SELECTED.
33*    Escrow Agent Name: _____ PALM TITLE ESCROW ATT: ROSS HARTOG _____
34*    Address: 633 S FEDERAL HIGHWAY 5TH FLOOR FORT LAUDERDALE FL 33301 Phone: _954-824-9920_
35*    Email: _____ Fax:_____
36*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
37*    days after Effective Date ......................................................... $_____ 0.00
38     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
39*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8......... _____ 0.00
40*   (d) Other: CASH DEAL NOT SUBJECT TO FINANCING ~ 100% DEPOSIT _____ ................ $_____ 0.00
41   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
42*    transfer or other Collected funds (See STANDARD S)............................................. $_____ 0

43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*    _11/12/2024   5:00PM_, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING; CLOSING DATE:** The closing of this transaction shall occur when all funds required for closing are
51     received by Closing Agent and Collected pursuant to STANDARD S and all closing documents required to be
52     furnished by each party pursuant to this Contract are delivered ("Closing").  Unless modified by other provisions of

Buyer's Initials [JM]    Page 1 of 13    Seller's Initials [SSS] _____

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.
TRANSACTIONS TransactionDesk Edition

53 *      this Contract, the Closing shall occur on
54      established by the Closing Agent.

*3 business days after seller notifies buyer of court approval and clear title from sellers attorney*  _ ("Closing Date"), at the time

55   **5. EXTENSION OF CLOSING DATE:**
56     (a) In the event Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial
57          Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), if Paragraph 8(b) is
58          checked, Loan Approval has been obtained, and lender's underwriting is complete, then Closing Date shall be
59          extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 7
60          days.
61     (b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the
62          unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be
63          extended as provided in STANDARD G.

64   **6. OCCUPANCY AND POSSESSION:**
65     (a) Unless Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property
66          to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
67          personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
68          codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss
69          to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and
70          shall have accepted the Property in its existing condition as of time of taking occupancy, see Rider T PRE-
71          CLOSING OCCUPANCY BY BUYER.
72     (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73          subject to a lease(s) or any occupancy agreements (including seasonal and short-term vacation rentals) after
74          Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof
75          shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all
76          within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of
77          occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such
78          election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the
79          Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s)
80          and Seller's affidavit shall be provided pursuant to STANDARD D, except that tenant Estoppel Letters shall not
81          be required on seasonal or short-term vacation rentals. If Property is intended to be occupied by Seller after
82          Closing, see Rider U POST-CLOSING OCCUPANCY BY SELLER.

83 *   **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under
84 *    this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.
85      IF NO BOX IS CHECKED, THEN BUYER MAY NOT ASSIGN THIS CONTRACT.

86                                       **FINANCING**

87   **8. FINANCING:**
88 *     ☒ (a) This is a cash transaction with no financing contingency.
89 *     ☐ (b) This Contract is contingent upon, within _____ (if left blank, then 30) days after Effective Date ("Loan
90 *      Approval Period"): (1) Buyer obtaining approval of a ☐ conventional ☐ FHA ☐ VA or ☐ other _____
91 *      (describe) mortgage loan for purchase of the Property for a **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or
92 *      adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left
93 *      blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30)
94      years ("Financing"); and (2) Buyer's mortgage broker or lender having received an appraisal or alternative valuation
95      of the Property satisfactory to lender, if either is required by lender, which is sufficient to meet the terms required
96      for lender to provide Financing for Buyer and proceed to Closing ("Appraisal").
97 *          (i) Buyer shall make application for Financing within _____ (if left blank, then 5) days after Effective Date
98      and use good faith and diligent effort to obtain approval of a loan meeting the Financing and Appraisal terms of
99      Paragraph 8(b)(1) and (2), above, ("Loan Approval") within the Loan Approval Period and, thereafter, to close this
100      Contract. Loan Approval which requires Buyer to sell other real property shall not be considered Loan Approval
101      unless Rider V is attached.

102      Buyer's failure to use good faith and diligent effort to obtain Loan Approval during the Loan Approval Period shall
103      be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes,
104      but is not limited to, timely furnishing all documents and information required by Buyer's mortgage broker and lender
105      and paying for Appraisal and other fees and charges in connection with Buyer's application for Financing.

106          (ii) Buyer shall, upon written request, keep Seller and Broker fully informed about the status of Buyer's
107      mortgage loan application, loan processing, appraisal, and Loan Approval, including any Property related conditions
108      of Loan Approval. Buyer authorizes Buyer's mortgage broker, lender, and Closing Agent to ~~disclose~~ such status

Buyer's Initials [JM] _____    Page **2** of 13    Seller's Initials [SSS] _____ _____
FloridaRealtors/FloridaBar-ASIS-6xx    Rev.8/24 © 2024 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

109 and progress and release preliminary and finally executed closing disclosures and settlement statements, as
110 appropriate and allowed, to Seller and Broker.

111 (iii) If within the Loan Approval Period, Buyer obtains Loan Approval, Buyer shall notify Seller of same in writing
112 prior to expiration of the Loan Approval Period; or, if Buyer is unable to obtain Loan Approval within Loan Approval
113 Period but Buyer is satisfied with Buyer's ability to obtain Loan Approval and proceed to Closing, Buyer shall deliver
114 written notice to Seller confirming same, prior to the expiration of the Loan Approval Period.

115 (iv) If Buyer is unable to obtain Loan Approval within the Loan Approval Period, or cannot timely meet the
116 terms of Loan Approval, all after the exercise of good faith and diligent effort, Buyer may terminate this Contract by
117 delivering written notice of termination to Seller prior to expiration of the Loan Approval Period; whereupon, provided
118 Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer
119 and Seller from all further obligations under this Contract.

120 (v) If Buyer fails to timely deliver any written notice provided for in Paragraph 8(b)(iii) or (iv), above, to Seller
121 prior to expiration of the Loan Approval Period, then Buyer shall proceed forward with this Contract as though
122 Paragraph 8(a), above, had been checked as of the Effective Date; provided, however, Seller may elect to terminate
123 this Contract by delivering written notice of termination to Buyer within 3 days after expiration of the Loan Approval
124 Period and, provided Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit
125 thereby releasing Buyer and Seller from all further obligations under this Contract.

126 (vi) If Buyer has timely provided either written notice provided for in Paragraph 8b(iii), above, and Buyer
127 thereafter fails to close this Contract, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
128 default or inability to satisfy other contingencies of this Contract; or (2) Property related conditions of the Loan
129 Approval (specifically excluding the Appraisal valuation) have not been met unless such conditions are waived by
130 other provisions of this Contract; in which event(s) the Buyer shall be refunded the Deposit, thereby releasing Buyer
131 and Seller from all further obligations under this Contract.
*
132 ☐ (c) Assumption of existing mortgage (see Rider D for terms).
*
133 ☐ (d) Purchase money note and mortgage to Seller (see Rider C for terms).

134 **CLOSING COSTS, FEES AND CHARGES**

135 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
136 (a) **COSTS TO BE PAID BY SELLER:**
137 • Documentary stamp taxes and surtax on deed, if any          • HOA/Condominium Association estoppel fees
138 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)   • Recording and other fees needed to cure title
139 • Title search charges (if Paragraph 9(c)(iii) is checked)       • Seller's attorneys' fees
140* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked) • Other:_____
141 • Charges for FIRPTA withholding and reporting
142 If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11,
143 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
144 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
145 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

146 (b) **COSTS TO BE PAID BY BUYER:**
147 • Taxes and recording fees on notes and mortgages          • Loan expenses
148 • Recording fees for deed and financing statements          • Appraisal fees
149 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked) • Buyer's Inspections
150 • Survey (and elevation certification, if required)          • Buyer's attorneys' fees
151 • Lender's title policy and endorsements                    • All property related insurance
152 • HOA/Condominium Association application/transfer fees      • Owner's Policy Premium (if Paragraph
153 • Municipal lien search (if Paragraph 9(c)(ii) is checked)     9(c)(iii) is checked)
154* • Other:_____

155* (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
156 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
157 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
158 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
159 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property,
160 Seller shall furnish a copy to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
161 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
162 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
163 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
164 closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

165  search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
166  liens imposed pursuant to Chapters 153, 159 or 170, F.S., in favor of any governmental body, authority or agency.
167  **(CHECK ONE):**
168 *  ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
169 *  premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
170  endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
171  provider(s) as Buyer may select; or
172 *  ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
173  services related to Buyer's lender's policy, endorsements and loan closing; or
174 *  ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Buyer shall designate Closing Agent. Seller shall
175 *  furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a
176  continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for
177  reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing
178  continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not
179 *  be obligated to pay more than $_____ (if left blank, then $200.00) for abstract continuation or title
180  search ordered or performed by Closing Agent.
181  (d)  **SURVEY:** At least 5 days prior to Closing Date, Buyer may, at Buyer's expense, have the Real Property
182  surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
183  Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
184 *  (e)  **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☐ N/A shall pay for a home warranty plan issued by
185 *  _____ at a cost not to exceed $_____. A home
186  warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
187  appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
188  (f)  **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
189  ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
190  ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
191  improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
192  imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
193  be paid in installments **(CHECK ONE):**
194 *  ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
195  Installments prepaid or due for the year of Closing shall be prorated.
196 *  ☒ (b) Seller shall pay, in full, prior to or at the time of Closing, any assessment(s) allowed by the public body
197  to be prepaid. For any assessment(s) which the public body does not allow prepayment, OPTION (a) shall be
198  deemed selected for such assessment(s).
199  IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
200  This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
201  (CDD) pursuant to Chapter 190, F.S., or special assessment(s) imposed by a special district pursuant to
202  Chapter 189, F.S., which lien(s) or assessment(s) shall be prorated pursuant to STANDARD K.

203                                              **DISCLOSURES**

204  **10. DISCLOSURES:**
205  (a)  **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206  sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207  exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208  radon and radon testing may be obtained from your county health department.
209  (b)  **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210  does not know of any improvements made to the Property which were made without required permits or made
211  pursuant to permits which have not been properly closed or otherwise disposed of pursuant to Section 553.79,
212  F.S. If Seller identifies permits which have not been closed or improvements which were not permitted, then
213  Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession,
214  knowledge, or control relating to improvements to the Property which are the subject of such open permits or
215  unpermitted improvements.
216  (c)  **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
217  desires additional information regarding mold, Buyer should contact an appropriate professional.
218  (d)  **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
219  zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
220  improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

221       or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
222       Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
223       flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
224       through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
225*      may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
226       Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
227       obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
228       designation of Property.

229    (e)   **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
230       required by Section 553.996, F.S.

231    (f)   **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
232       mandatory.

233    (g)   **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
234       **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
235       **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

236    (h)   **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
237       PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
238       PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
239       IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
240       PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
241       COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

242    (i)   **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
243       Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
244       and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
245       is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
246       under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
247       V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
248       advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
249       FIRPTA.

250    (j)   **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
251       not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding
252       sentence, Seller extends and intends no warranty and makes no representation of any type, either express or
253       implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller
254       has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected
255       building, environmental or safety code violation.

256                **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the
258       Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS
259       IS Maintenance Requirement"). See Paragraph 9(a) for escrow procedures, if applicable.

260 **12. PROPERTY INSPECTION; RIGHT TO CANCEL:**
261*    (a)   *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have ___0___ (if left blank, then 15)*
262       *days after Effective Date ("Inspection Period") within which to have such inspections of the Property*
263       *performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole*
264       *discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering*
265       *written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely*
266       *terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall*
267       *be released of all further obligations under this Contract; however, Buyer shall be responsible for*
268       *prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting*
269       *from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the*
270       *preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to*
271       *terminate granted herein, Buyer accepts the physical condition of the Property and any violation of*
272       *governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to*
273       *Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all*
274       *repairs and improvements required by Buyer's lender.*

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

<div align="center">

**ESCROW AGENT AND BROKER**

</div>

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to Collection, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become Collected shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

331  Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
332  paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
333  Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
334  will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

335  <center>**DEFAULT AND DISPUTE RESOLUTION**</center>

336  **15. DEFAULT:**
337  (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
338  including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
339  for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
340  in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under
341  this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
342  rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
343  be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
344  shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
345  (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
346  reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
347  Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
348  from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
349  performance.
350  This Paragraph 15 shall survive Closing or termination of this Contract.
351  **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
352  Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
353  as follows:
354  (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
355  resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
356  16(b).
357  (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
358  Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
359  The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
360  sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
361  may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
362  16 shall survive Closing or termination of this Contract.
363  **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
364  by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
365  conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
366  from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
367  litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

368  <center>**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**</center>

369  **18. STANDARDS:**
370  **A. TITLE:**
371  (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
372  Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
373  be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
374  or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
375  in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
376  subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
377  prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
378  Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
379  entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
380  10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
381  subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
382  addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
383  any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
384  be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
385  with law.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

(ii)  **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

**C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

**D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

**E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

**F.  TIME: Time is of the essence in this Contract.** Calendar days, based on where the Property is located, shall be used in computing time periods. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, national legal public holiday (as defined in 5 U.S.C. Sec. 6103(a)), or a day on which a national legal public holiday is observed because it fell on a Saturday or Sunday, shall extend to the next calendar day which is not a Saturday, Sunday, national legal public holiday, or a day on which a national legal public holiday is observed.

**G.  FORCE MAJEURE:** Buyer or Seller shall not be required to exercise or perform any right or obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the right or obligation, or the availability of services, insurance, or required approvals essential to Closing, is disrupted, delayed,

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

442  caused or prevented by a Force Majeure event. "Force Majeure" means: hurricanes, floods, extreme weather,
443  earthquakes, fires, or other acts of God, unusual transportation delays, wars, insurrections, civil unrest, or acts of
444  terrorism, governmental actions and mandates, government shut downs, epidemics, or pandemics, which, by
445  exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome.
446  The Force Majeure event will be deemed to have begun on the first day the effect of the Force Majeure prevents
447  performance, non-performance, or the availability of services, insurance or required approvals essential to Closing.
448  All time periods affected by the Force Majeure event, including Closing Date, will be extended a reasonable time
449  up to 7 days after the Force Majeure event no longer prevents performance under this Contract; provided, however,
450  if such Force Majeure event continues to prevent performance under this Contract more than 30 days beyond
451  Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit
452  shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
453  **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
454  personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
455  described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
456  transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
457  Contract.
458  **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
459  (i)  **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
460  the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
461  is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
462  insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
463  means.
464  (ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
465  sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
466  owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
467  receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
468  the survey, flood elevation certification, and documents required by Buyer's lender.
469  (iii)  **FinCEN GTO REPORTING OBLIGATION**. If Closing Agent is required to comply with a U.S. Treasury
470  Department's Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Order ("GTO"), then Buyer
471  shall provide Closing Agent with essential information and documentation related to Buyer and its Beneficial
472  Owners, including photo identification, and related to the transaction contemplated by this Contract which are
473  required to complete mandatory reporting, including the Currency Transaction Report; and Buyer consents to
474  Closing Agent's collection and report of said information to IRS**.**
475  (iv)  **PROCEDURE:** The deed shall be recorded upon Collection of all closing funds. If the Title Commitment
476  provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
477  procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to Collection of all closing**
478  **funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
479  **J.  ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
480  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
481  escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
482  for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
483  Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
484  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
485  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
486  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
487  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
488  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
489  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
490  **K.  PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
491  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
492  (including special benefit tax assessments imposed by a CDD pursuant to Chapter 190, F.S., and assessments
493  imposed by special district(s) pursuant to Chapter 189, F.S.), interest, bonds, association fees, insurance, rents
494  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
495  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
496  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
497  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
498  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L.  ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M.  RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5% or receive a refund of the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N.  1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O.  CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public or official records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may only be made by mail, facsimile transmission, personal delivery or email. A facsimile or electronic copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P.  INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q.  WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R.  RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S.  COLLECTION or COLLECTED:** "Collection" or "Collected" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been Collected in Closing Agent's accounts.

**T.  RESERVED.**

**U.  APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V.  FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

556   (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
557   from the IRS authorizing a reduced amount of withholding.
558   (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
559   provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
560   stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
561   home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
562   shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
563   to the IRS.
564   (ii)   If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
565   or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
566   reduced sum required, if any, and timely remit said funds to the IRS.
567   (iii)   If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
568   provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
569   received as of Closing, Buyer shall, at Closing,  withhold the applicable percentage of the amount realized by Seller
570   on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
571   escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
572   parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
573   directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
574   (iv)   In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
575   transaction, Seller shall deliver to Buyer, at Closing, the additional Collected funds necessary to satisfy the
576   applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
577   disbursement in accordance with the final determination of the IRS, as applicable.
578   (v)   Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
579   8288 and 8288-A, as filed.
580   **W.   RESERVED**
581   **X.   BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
582   *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
583   *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
584   *subsequently discovered by the Buyer or anyone claiming* **by, through, under or against the Buyer.** *This*
585   *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
586   *Closing.*

587                                    **ADDENDA AND ADDITIONAL TERMS**

588 *  **19.  ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
589   Contract (**Check if applicable**):

☐ A.  Condominium Rider         ☐ M.  Defective Drywall              ☐ X.  Kick-out Clause
☒ B.  Homeowners' Assn.         ☐ N.  Coastal Construction Control   ☐ Y.  Seller's Attorney Approval
☐ C.  Seller Financing                  Line                         ☐ Z.  Buyer's Attorney Approval
☐ D.  Mortgage Assumption       ☐ O.  Insulation Disclosure          ☐ AA.  Licensee Property Interest
☐ E.  FHA/VA Financing          ☐ P.  Lead Paint Disclosure (Pre-1978) ☐ BB.  Binding Arbitration
☐ F.  Appraisal Contingency     ☐ Q.  Housing for Older Persons      ☐ CC.  Miami-Dade County
☐ G.  Short Sale                ☐ R.  Rezoning                              Special Taxing District
☐ H.  Homeowners/Flood Ins.     ☐ S.  Lease Purchase/ Lease Option          Disclosure
☐ I.   RESERVED                 ☐ T.  Pre-Closing Occupancy          ☐ DD.  Seasonal/Vacation Rentals
☐ J.   Interest-Bearing Acct    ☐ U.  Post-Closing Occupancy         ☐ EE.  PACE Disclosure
☐ K.  RESERVED                  ☐ V.  Sale of Buyer's Property       ☒ Other: BUYER SINGLE AGENCY
☐ L.  RESERVED                  ☐ W.  Back-up Contract                       COMPENSATION DISCLOSURE
.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

590 * **20. ADDITIONAL TERMS:**

591   THIS PROPERTY IS UNDER THE CONTROL OF THE FEDERAL BANKRUPTCY COURT, AND CLOSING AGENT WILL BE SELECTED BY
592   BANKRUPTCY COURT. BUYER SHALL BE RESPONSIBLE FOR CLOSING COSTS INCLUDING BUT NOT LIMITED TO THE TITLE SEARCH
      AND OWNERS TITLE INSURANCE POLICY AND PREMIUM.

593
594   THIS IS A CASH DEAL NOT SUBJECT TO FINANCING OR OBTAINING BORROWED FUNDS.  THE BUYER ACCEPTS PROPERTY IN AS-IS
595   CONDITION AND WAIVES ALL RIGHTS TO INSPECT PROPERTY. THERE ARE NO BUYER CONTINGENCIES WITH THE EXCEPTION OF
      OBTAINNG CLEAR TITLE.

596   Buyer hereby acknowledges that it is the intent of the Seller to structure its sale as a Reverse or Regular
597   1031 Exchange per Internal Revenue Codes.  Seller will cooperate in signing any documents related to the
598   Reverse or Regular 1031 Exchange.
      1. Seller is Sonya S. Slott, solely in her capacity as Ch. 7 Trustee for Jeffrey Mark Gallups; Case No.
599   24-12653-SMG.
600   2. This contract is subject to the approval of the US Bankruptcy Court for the Southern District of Florida.
601   3. All disputes arising from this contract shall be heard by the US Bankruptcy Court for the Southern District
      of Florida.
602   4. This Property is sold "As-Is, Where-Is" with no representations, warranties or guarantees of any kind,
603   whether stated or implied by the Trustee and/or her professionals.
604   5. Due to the Property being under the control of the Federal Bankruptcy Court, the Closing Agent has been
      pre-selected by the Seller. However, Buyer is responsible for all closing costs, including, but not limited to,
605   the title search and owner's title insurance policy and premium.
606   6. This Sale is subject to Federal Bankruptcy Court approval via a Sales Hearing and Final Sale Order approving
      the Sale. Closing will occur (15) days from entry of such Order by the Court.
607   7. The offer is contingent upon the trustee reaching a satisfactory carve out deal with the DOJ.

608                                             **COUNTER-OFFER**

609 *     ☐ Seller counters Buyer's offer.

610                          **[The remainder of this page is intentionally left blank.**
611                          **This Contract continues with Line 612 on Page 13 of 13.]**

Buyer's Initials  JM                    Page **12** of 13        Seller's Initials  SSS
FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24 © 2024 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.
TRANSACTIONS
TransactionDesk Edition

612  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
613  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

614  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

615  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
616  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
617  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
618  *interested persons.*

619  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
620  TO BE COMPLETED.

---

621  <div align="center">**ATTENTION: SELLER AND BUYER**</div>

622  **CONVEYANCES TO FOREIGN BUYERS:** Part III of Chapter 692, Sections 692.201 - 692.205, Florida Statutes,
623  2023 (the "Act"), in part, limits and regulates the sale, purchase and ownership of certain Florida properties by
624  certain buyers who are associated with a "foreign country of concern", namely: the People's Republic of China, the
625  Russian Federation, the Islamic Republic of Iran, the Democratic People's Republic of Korea, the Republic of
626  Cuba, the Venezuelan regime of Nicolás Maduro, or the Syrian Arab Republic. **It is a crime to buy or knowingly**
627  **sell property in violation of the Act.**

628  **At time of purchase, Buyer must provide a signed Affidavit which complies with the requirements of the**
629  **Act.** Seller and Buyer are advised to seek legal counsel regarding their respective obligations and liabilities under
630  the Act.

---

631* Buyer: *Joshua Myers*    Date: 11/11/2024
     Signed by: MEYERS FAMILY EXEMPT TRUST
632* Buyer: _____    Date: _____
633* Seller: *Sonya S. Slott*    Date: 11/11/2024
     Signed by: Sonya S. Slott, solely in her capacity as Ch. 7 Trustee
634* Seller: _____    Date: _____

635  Buyer's address for purposes of notice      Seller's address for purposes of notice
636* _____    _____
637* _____    _____
638* _____    _____

639  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
640  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
641  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
642  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
643  retained such fees from the escrowed funds. This Contract shall not modify any offer of compensation made by
644  Seller or Listing Broker to Cooperating Brokers.

645*          JEFFREY GREENBERG          LAMAR FISHER AND FRANCIS D. SANTOS
646  **Cooperating Sales Associate, if any**      **Listing Sales Associate**

647*     COAST PROPERTIES OF SOUTH FLORIDA            FISHER AUCTION CO.
648  **Cooperating Broker, if any**      **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-6xx   Rev.8/24 © 2024 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition



# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**When initialed by all parties**, the parties acknowledge that the disclosure set forth below was provided to Buyer prior to execution of the Florida Realtors/Florida Bar Residential Contract For Sale and Purchase between the parties and the clauses below will be incorporated therein:

Sonya S. Slott, solely in her capacity as Ch. 7 Trustee _____ (SELLER)

and _____ MEYERS FAMILY EXEMPT TRUST _____ (BUYER)

concerning the Property described as ____ 205   HENDRICKS ISLE ____

_____ FORT LAUDERDALE _____ 33301

**Buyer's Initials** [JM] _____    **Seller's Initials** [SSS] _____

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

**PART A. DISCLOSURE SUMMARY**

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

**BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.**

**Disclosure Summary For** _____ ACQUA MARINA _____
(Name of Community)

1. AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
2. THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
3. YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $ 0.00 PER _____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
4. YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
5. YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
6. THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
7. THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
8. THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
9. THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

11/11/2024                 *Joshua Myers*
_____   _____
DATE                         BUYER MEYERS FAMILY EXEMPT TRUST

_____   _____
DATE                         BUYER

**Page 1 of 2  B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE   (SEE CONTINUATION)**
CR-6 Rev. 10/21 © 2021 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

**B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE (CONTINUED)**

**PART B.**

The Property is located in a community with a mandatory homeowners' association or an association that may require the payment of assessments, charges, or impose restrictions on the Property ("Association").

1.  **APPROVAL:** The Association's approval of Buyer **(CHECK ONE):** ___ is  **☒** is not required.  If Association approval of this transaction or the Buyer is required, this Contract is contingent upon Association approval no later than _____ (if left blank, then 5) days prior to Closing.  Within _____ (if left blank, then 5) days after Effective Date, the Seller shall initiate the approval process with Association. Buyer shall pay application and related fees, as applicable, unless otherwise provided for in Association governing documents or agreed to by the parties.  Buyer and Seller shall sign and deliver any documents required by the Association, provide for interviews or personal appearances, if required, and use diligent effort to timely obtain Association approval.  If approval is not granted within the stated time period above, Buyer may terminate this Contract, and shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2.  **PAYMENT OF FEES, ASSESSMENTS, AND OTHER ASSOCIATION CHARGES:**
    (a) Buyer shall pay any application, initial contribution, and/or membership or other fees charged by Association pursuant to its governing documents or applicable Florida Statutes.  If applicable, the current amount(s) is:

| $ | per | for | to |
|---|---|---|---|
| 2,065.00 | MONTH | HOMEOWNERS FEES | HOMEOWNERS ASSOCIATION |
| | | | |
| | | | |
| | | | |

    (b) If special or other assessments levied by the Association exist as of the Effective Date, or any assessment(s) are levied after the Effective Date and prior to the Closing Date, and are due and payable in full prior to Closing Date, then Seller shall pay all such assessment(s) prior to or at Closing; or, if any such assessment(s) may be paid in installments, then Seller shall pay all installments which are due before Closing Date, prior to or at Closing, and **(CHECK ONE):** ☐ Buyer ☐ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**
    (c) Seller shall pay, prior to or at Closing, all fines imposed against the Seller or the Property by the Association which exist as of the Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

**The Association or Management Company to which assessments, special assessments or rent/land use fees are due and payable, is/are:**

_____     _____

Contact Person _____     Contact person _____

Phone _____     Phone _____

Email _____     Email _____

**Additional contact information can be found on the Association's website, which is:**

www. _____

CR-6 Rev. 10/21  © 2021 Florida Realtors® and The Florida Bar.  All rights reserved.

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition

# Compensation Agreement - Seller to Buyer's Broker



### 1.  PARTIES

This Seller to Buyer's Broker Compensation Agreement is between:

Buyer's Broker:_____COAST PROPERTIES OF SOUTH FLORIDA_____ ("Buyer's Broker")
and

Seller: Sonya S. Slott, solely in her capacity as Ch. 7 Trustee_____ ("Seller")

### 2.  PROPERTY

Property Address: _____205_____HENDRICKS ISLE_____
(insert address)
_____FORT LAUDERDALE_____33301_____ ("Property") listed by

_____FISHER AUCTION CO._____ ("Seller's Broker").

### 3.  TERM

This Compensation Agreement takes effect when a fully executed copy has been delivered to all parties to this Agreement and will remain in effect for _____90_____ (if left blank, then 30) days ("Term"). In no event shall the Term extend past the termination date of Seller's Broker's current listing of the Property, including any extensions or effective protection periods; except that, upon full execution of a contract for sale and purchase by a buyer of the Property procured by the Buyer's Broker ("Purchase Agreement"), the Term will automatically extend through the date of the actual closing of the Purchase Agreement.

### 4.  BUYER'S BROKER COMPENSATION

If Buyer's Broker is the procuring cause of the sale of Property during the Term, Seller will compensate Buyer's Broker as stated below at closing of Property.

Seller agrees to compensate Buyer's Broker (CHECK ONE):
☐ $ _____ (flat fee)
☐ _____ % of the gross purchase price of the Property plus $ _____.
☒ other (specify): _____

Other terms:
2.0% to Coast Properties of South Florida
2.0% to Fisher Auction Co.

Seller (___SSS___)(_____) and Buyer's Broker (___JG___) acknowledge receipt of a copy of this page, which is Page 1 of 2.
*The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*

CASB-1   Rev 7/24                                                          © 2024 Florida Association of Realtors®

Seller acknowledges that compensation paid to Buyer's Broker is for services Buyer's Broker provided to buyer.

5.  **DISPUTE RESOLUTION**

All controversies, claims, and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation with a mediator agreed upon by the parties.

If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:

**Arbitration:** By initialing in the space provided, **Seller** (_____) (_____) and **Buyer's Broker or Authorized Associate** (_JG_) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will equally split the arbitrator's fees and administrative fees of arbitration.

6.  **MISC. CLAUSES**

This Agreement will be construed under Florida law. Electronic signatures will be acceptable and binding.

**Broker's commissions are not set by law and are fully negotiable.** In no event will Buyer's Broker's compensation exceed the amount of compensation in the written agreement with buyer.

Seller

_____
Seller's Signature
FEDERAL BANKRUPTCY TRUSTEE FOR JEFFREY GALLOPS
Date: 11/11/2024 _____

Seller

_____
Seller's Signature

Date: _____

Buyer's Broker

_Jeff Greenberg_____
Broker or Authorized Associate
JEFFREY GREENBERG
Date: _____11/11/2024_____

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (_SSS_) (_____) and Buyer's Broker (_JG_) acknowledge receipt of a copy of this page, which is Page 2 of 2. *The Parties acknowledge this form should not be used to share offers of compensation to buyer brokers or other buyer representatives via any field in the Multiple Listing Service.*

CASB-1   Rev 7/24

© 2024 Florida Association of Realtors®

This software is licensed to [Jeff Greenberg - Coast Properties of S. Florida] www.transactiondesk.com.

TRANSACTIONS
TransactionDesk Edition



## Brokerage Relationship Disclosure
FLORIDA ASSOCIATION OF REALTORS®



### SINGLE AGENT NOTICE

**FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES OPERATING AS SINGLE AGENTS DISCLOSE TO BUYERS AND**

**SELLERS THEIR DUTIES.** As a single agent, _____COAST PROPERTIES OF SOUTH FLORIDA_____

and its associates owe to you the following duties:

1. Dealing honestly and fairly;
2. Loyalty;
3. Confidentiality;
4. Obedience;
5. Full disclosure;
6. Accounting for all funds;
7. Skill, care, and diligence in the transaction;
8. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing; and
9. Disclosing all known facts that materially affect the value of residential real property and are not readily observable.

11/11/24                                      *Joshua Myers*
AuthentiSIGN

_____          _____
**Date**                                      **Signature**

---

Copy returned to **Customer** on the _____ day of _____, _____ by: ❏ personal delivery ❏ mail ❏ E-mail ❏ facsimile.

---

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR.  REALTOR is a registered collective membership mark which may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

BRD-6sa    Rev. 7/06    © 2006    Florida Association of REALTORS®    All Rights Reserved

**This software is licensed to [Jeff Greenberg -  Coast Properties of S. Florida] www.transactiondesk.com.**

Instanet forms

**Addendum to Contract**





Addendum No. ___1___ to the Contract with the Effective Date of _____11/11/2024_____ between

Sonya S. Slott, solely in her capacity as Ch. 7 Tr _____ (Seller)

and _____ MEYERS FAMILY EXEMPT TRUST _____ (Buyer)

concerning the property described as: ___ 205   HENDRICKS ISLE _____ FORT LAUDERDALE _____ 33301

VICTORIA ISLES 15-67 B POR OF LOT 8,9 BLK 3 DESC AS: COMM SE COR OF SAID LOT 8,N 54.72 TO POB,W 125,N 44.82,E 125,S 44.8

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:

First Deposit to be reduced to $360,000.00

Buyer to deposit additional $3,240,000.00 within three days of Approval of Sale by Court/Judge.

Meyers Family Trust, Buyer has a spelling error.  Buyer name is spelled Myers Family Trust.

Buyer: *Joshua Myers* _____ Date: ___11/12/2024___

MEYERS FAMILY EXEMPT TRUST

Buyer: _____ Date: _____

Seller: _____ Date: ___11/12/2024___

Sonya S. Slott, solely in her capacity as Ch. 7 Tr

Seller: _____ Date: _____

This software is licensed to [Jeff Greenberg -  Coast Properties of S. Florida] www.transactiondesk.com.

# EXHIBIT B

| | | | | |
|---|---|---|---|---|
| American Land Title Association | | | | ALTA Settlement Statement - Combined<br>Adopted 05-01-2015 |

File No./Escrow No.: 2024-169
Print Date & Time: 11/22/2024  12:46 PM
Officer/Escrow Officer:
Settlement Location:   633 South Federal
Highway
5th Floor

**Palm Title Partners, LLC**
**1214002**
**633 South Federal Highway**
**5th Floor**
**Fort Lauderdale, FL 33301**

Property Address:   205 Hendricks Isle, Fort Lauderdale, FL 33301
Buyer:   Myers Family Exempt Trust
Seller:   Bankruptcy Estate of Jeffrey Gallups
Lender:

Settlement Date:      December 20, 2024
Disbursement Date: December 20, 2024
Additional dates per state requirements:

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | 3,600,000.00 | Sale Price of Property | 3,600,000.00 | |
| | | Deposit | | 360,000.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 2,197.01 | County Taxes from 12/20/2024 to 12/31/2024 | 2,197.01 | |
| | 270.82 | Homeowner's Association from 12/20/2024 to 12/31/2024 | 270.82 | |
| | 495.87 | Non-Ad Valorem from 12/20/2024 to 09/30/2025 | 495.87 | |
| | | | | |
| | | **Loan Charges to** | | |
| | | | | |
| | | **Other Loan Charges** | | |
| | | | | |
| | | **Impounds** | | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| 795.00 | | Title - Settlement Fee to Palm Title Partners, LLC | 795.00 | |
| | | Title - Owner's title insurance (Optional) to Old Republic National Title Insurance Company/ATFS | 11,575.00 | |
| | | Title - Owner's Title Endorsements: 5.1O, 9.2O (Optional) to Old Republic National Title Insurance Company/ATFS | 1,182.50 | |
| | | Title - Title Search and Examination to Palm Title Partners, LLC | 200.00 | |

Copyright 2015 American Land Title Association.
All rights reserved.

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | Title - Survey (Esimate) to Pinnell Survey | 500.00 | |
| 10.50 | | Title - E-Recording Fee ($5.25 per Document) to Simplifile | 5.25 | |
| 250.00 | | Title - HOA Estoppel (reimbursement) to Palm Title Partner, LLC | | |
| | | | | |
| | | **Commission** | | |
| 72,000.00 | | Real Estate Commission 72,000.00 to Coast Properties of South Florida, Inc. | | |
| 72,000.00 | | Real Estate Commission 72,000.00 to Fisher Auction Co., Inc. | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| 105.00 | | Recording Fees  Deed: $27.00 | 27.00 | |
| 25,200.00 | | Deed Tax to State of Florida | | |
| | | | | |
| | | **Payoff(s)** | | |
| 67,643.95 | | Payoff 2024 Real Property Taxes - Broward County Tax Collector | | |
| 6,270.00 | | Payoff and Satisfy HOA Liens - Hendricks Isle Homeowners Association | | |
| 2,965,765.00 | | Payoff and Satisfy First Mortgage | | |
| 125.00 | | Alarm Special Assessment - City of Fort Lauderdale | | |
| 206.90 | | Water Service - City of Fort Lauderdale | | |
| 25,000.00 | | Payoff to U.S. Department of Justice | | |
| | | | | |
| | | **Miscellaneous** | | |
| 50.00 | | Document Delivery Fee (Postage/Courier) to Palm Title Partners, LLC | 50.00 | |
| 7,500.00 | | Expense Reimbursement (Estimate) to Fisher Auction Co. | | |
| 50.00 | | Certified Copy of Bankruptcy Sale Order Reimbursement (Estimate) to Palm Title Partners, LLC | | |
| | | HOA Prepayment to Hendricks Isle Homeowners Association | 1,376.00 | |

| Seller | | | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| 3,242,971.35 | 3,602,963.70 | **Subtotals** | 3,618,674.45 | 360,000.00 |
| | | Due From Borrower | | 3,258,674.45 |
| 359,992.35 | | Due To Seller | | |
| **3,602,963.70** | **3,602,963.70** | **Totals** | **3,618,674.45** | **3,618,674.45** |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2024-169
Printed on November 22, 2024 at 12:46 PM

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize Palm Title Partners, LLC to cause the funds to be disbursed in accordance with this statement.

**Myers Family Exempt Trust**

By:_____
   Joshua Myers, Trustee

**Bankruptcy Estate of Jeffrey Gallups**

By:_____
   Sonya S. Slott, Trustee

_____
Escrow Officer

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2024-169
Printed on November 22, 2024 at 12:46 PM